JOHN LEMONS v. THE STATE.

No. 493.    Decided March 9, 1910.

Rehearing denied May 11, 1910.

**1.—Assault to Rape—Postponement—Motion for New Trial.**

Where, upon appeal from a conviction of assault with intent to rape, the motion for new trial setting out the motion for postponement of the trial on account of defendant being misled as to the indictment against him was not sworn to, and there was no bill of exceptions in the record covering this matter, the same could not be considered.

**2.—Same—Continuance—Bill of Exceptions.**

Where the action of the court in overruling a motion for continuance was not reserved by bill of exceptions, the same can not be considered on appeal.

**3.—Same—Indictment—Male.**

Where, upon trial for assault with intent to rape, the indictment was in the usual form, the contention that it failed to allege that defendant was a male was untenable.

**4.—Same—Change of Venue—Compurgators—Contest by State.**

Where, upon trial for assault with intent to rape, the motion for change of venue was on the ground of prejudice and a dangerous combination which prevented the defendant from obtaining a fair trial, and the State contested same on the ground that the compurgators had not sufficient acquaintance or means of knowledge with reference to the matters set up in their affidavits,

and the defendant excepted thereto on the ground that said contest did not specifically controvert the ground as to the combination against defendant. Held, that the court properly overruled the defendant's exception; besides the defendant having introduced testimony upon both grounds of his motion to change the venue, the legal issue was formed and there was no error.

**5.—Same—Charge of Court—Force—Resistance.**

Upon trial for assault with intent to rape, where the evidence showed an assault upon prosecutrix, there was no error in refusing a requested charge, that if the prosecutrix could have avoided carnal intercourse with the defendant by resistance not used by her at the time, or by anything she could or should have done under the circumstances then surrounding her, to acquit the defendant.

**6.—Same—Charge of Court—Consent—Knowledge of Defendant.**

Upon trial for assault with intent to rape, where the evidence showed an assault upon prosecutrix, there was no error in the court's refusal of defendant's requested instruction that the defendant must have known, at the very time that he used violence against prosecutrix, that she was not consenting thereto either directly or indirectly, and that he must have had no reasonable ground for believing that such violence would not be consented to.

**7.—Same—Charge of Court—Eliminating Evidence.**

Upon trial for assault with intent to rape, there was no error in the court's refusal of defendant's requested charges to single out certain evidence in the case, and by a process of reasoning eliminate from the consideration of the jury such evidence.

**8.—Same—Evidence—Conduct of Prosecutrix.**

Where, upon trial for assault with intent to rape, the defendant was allowed all latitude in the examination of the prosecutrix with reference to her conduct and conversations with different men, there was no error in excluding testimony as to the conclusion formed in the mind of the prosecutrix with reference to her said conduct.

**9.—Same—Evidence—Res Gestae.**

Upon trial of assault with intent to rape, where the evidence showed that immediately after the alleged assault upon prosecutrix she screamed and ran to the back door of a neighbor and told him that some one had broken into her house and insulted her, and when asked who it was replied that she did not know the name of the man but knew the man, describing him; this was res gestae.

**10.—Same—Evidence—Opinion of Witness.**

Upon trial for assault with intent to rape, there was no error in excluding testimony as to what facts the witness based his opinion on, that it was not the defendant who assaulted prosecutrix.

**11.—Same—Evidence—Collateral Matter—Impeachment.**

Upon trial for assault with intent to rape, the prosecutrix denied that she had stated to a certain witness that she did not know who the man was that broke into her house, and when said witness was placed on the stand to impeach prosecutrix he answered that prosecutrix did not tell him so, and also answered that he did not tell another witness that prosecutrix told him she did not know the man who broke into her house, there was no error in the court's ruling in not allowing the defendant to place upon the witness stand this last witness to impeach the first witness.

**12.—Same—Evidence—Bill of Exceptions.**

Where, upon appeal from a conviction of assault with intent to rape, the bill of exceptions in the record showed that the witness was permitted to answer the question complained of, there was nothing to review, the defendant having accepted the court's explanation.

**13.—Same—Evidence—General Reputation.**

Upon trial for assault with intent to rape, there was no error in excluding testimony by the defendant that his wife was the daughter of a highly respectable and reputable citizen.

**14.—Same—Evidence—Recalling Witness.**

Upon trial for assault with intent to rape, there was no error in permitting the State to recall a State's witness to restate the conversation the witness had with a third party with reference to the size of the man who entered prosecutrix's house.

**15.—Same—Exceptions to Charge of Court—Practice on Appeal.**

Upon appeal from a conviction of assault with intent to rape, where the objection in motion for new trial to the charges of the court was that the court erred in giving the charges, the same was too general to be considered.

**16.—Same—Sufficiency of the Evidence.**

Where, upon trial for assault with intent to rape, the evidence sustained the conviction, there was no error.

**17.—Same—Terms of the District Court—Change of Terms of Court.**

Where, upon trial for assault with intent to rape, it appeared that the terms of the District Court had been changed, but that the indictment had been found under the old law which was still in effect, the same was valid.

**18.—Same—Constitutional Law—Number of Terms of Court.**

Section 7, article 5, of the Constitution, does not forbid more than two regular terms of court in each county of the judicial district, but requires as many as two regular terms in each year.

**19.—Same—Constitutional Law—Judgment—Terms of Court.**

Where the law changing the time of holding the District Court had the effect that one of the two terms of court for the year in a county of the judicial district ran into the second year, the same was not invalid for this reason.

Appeal from the District Court of Swisher. Tried below before the Honorable L. S. Kinder.

Appeal from a conviction of assault with intent to rape; penalty, five years imprisonment in the penitentiary.

The testimony of the prosecutrix was substantially that she knew the defendant, and that she saw him on the night of the alleged assault; that she first saw him between ten and eleven o'clock that night, when he came to her house in a rig and stopped in front of her house, knocked at her door and asked if she did not want company for the night; that she told him she did not, to go away, that he had no business there, etc., and that she would dress herself and go to the neighbor if he tried to come in; that defendant started off after asking prosecutrix's pardon but said that he would come back, to which she replied he need not do so; that defendant returned about half past two or three o'clock in the morning of the same night and knocked at prosecutrix's door, and upon being asked what he wanted and who he was, said: "It's me, you know you haven't slept any since I was here waiting to come through." That he prowled around the door to the window and back for about a quarter of an hour; that prosecutrix could not remember everything that was said at the time; that she

told him to get out of there as many as half a dozen times; that he said he would sit there until the sun was two hours high if she did not let him in; that he stepped to the window of the south room and pulled the screen off and tried to raise it, and finally stepped back to the east door, saying: "I will give you five minutes to open this door; I am going to have this tonight and you will have to give it to me," and that he then broke open the door and entered, seized the prosecutrix and dragged her out into the other room; that in the tussle between them prosecutrix got her left shoulder pretty well wrenched; that he got the prosecutrix as far as the door between the rooms, and that she told him if there was any man about him to go sit down until she quieted the children who were sitting up in bed crying; that he sat down in a chair and prosecutrix stepped back to the bed of the children, and seeing her chance, ran out of the door he came in at and slammed the door shut after her, that before he got the door open the prosecutrix was out of the gate and ran to one of her neighbors, and told him that she had been assaulted, etc. She was positive in identifying the defendant as the man.

The defendant set up an alibi. The defendant took the stand and denied that he was at prosecutrix's house, either in the buggy or otherwise, on the night of the alleged assault, and that he was not acquainted with her, and also supported his contention by other witnesses.

*Reeder, Graham & Williams* and *Martin & Zimmerman,* for appellant.—On question of having been misled by State's counsel as to what indictment defendant should be tried on: McFadin v. State, 44 Texas Crim. Rep., 471, 72 S. W. Rep., 172; Reed v. State, 31 Texas Crim. Rep., 35.

On question of motion to quash indictment: Lawson v. State, 13 Texas Crim. App., 83.

On question of motion of change of venue and State's controverting affidavit: Davis v. State, 19 Texas Crim. App., 201; Carr v. State, 19 Texas Crim. App., 635; Logan v. State, 47 S. W. Rep., 645; Randle v. State, 34 Texas Crim. Rep., 43, 28 S. W. Rep., 953; Mapes v. State, 14 Texas Crim. App., 129.

On question af admitting evidence as to the declarations of prosecutrix: Washington v. State, 17 Texas Crim. App., 197; Coker v. State, 35 Texas Crim. Rep., 57; Marks v. State, 49 Texas Crim. Rep., 274, 92 S. W. Rep., 414; Casey v. State, 50 Texas Crim. Rep., 392, 97 S. W. Rep., 496; Keith v. State, 50 Texas Crim. Rep., 63, 94 S. W. Rep., 1044.

On question of excluding testimony as to what prosecutrix thought of her own conduct with men: Wilson v. State, 67 S. W. Rep., 106; Fitzgerald v. Williams, 20 N. E. Rep., 100; Kellogg v. Nelson, 5 Wis., 125, 7 Ency. of Evidence, p. 149.

On question of court's refusal of defendant's requested charges and main charge of court: Kearse v. State, 88 S. W. Rep., 363; Caddell v. State, 44 Texas Crim. Rep., 231, 70 S. W. Rep., 91; Cotton v. State, 52 Texas Crim. Rep., 55, 105 S. W. Rep., 185; Cox v. State, 44 S. W. Rep., 157; Coffee v. State, 76 S. W. Rep., 761.

Upon question of change of terms of District Court: Doss v. Wagoner, 3 Texas, 515.

*John A. Mobley,* Assistant Attorney-General, for the State.—On question of terms of court: Railway v. Gross, 47 Texas, 428; Griffin v. State, 25 Texas Supp., 623; Winter v. Jones, 10 Ga., 190; Robinson v. State, 15 Texas, 311; Read v. Levy, 30 Texas, 738, and authorities cited in opinion.

McCORD, Judge.—The appellant has appealed in this case from a conviction of assault with intent to rape with a punishment of five years in the penitentiary. The indictment was returned in the District Court of Swisher County, charging the appellant in the first count with burglary by breaking and entering the house occupied. by Mrs. Anna Murray, with intent by force, threats and fraud to have carnal knowledge of the said Mrs. Anna Murray. The second count charges that appellant made an assault upon Mrs. Anna Murray with intent to commit the crime of rape. He was brought to trial upon this bill of indictment at the August term, 1909, of said court, resulting in his conviction aforesaid, the case being submitted to the jury upon the second count only.

1. When the case was called for trial appellant made a motion in the nature of an objection to the cause being tried at that term of court for various reasons set out in said motion; that is, that the minutes fail to show when the indictment was received by the court and ordered filed; that the copy of the indictment that was served upon him was not a true and correct copy; that the appellant's counsel had been misled by the State's counsel and had been induced to believe that the indictment was going to be dismissed and a new indictment found; that a new indictment was returned into court but was subsequently dismissed and appellant objected to going to trial at that time because he had been misled as above stated. This motion or objection is not sworn to, nor is any bill of exceptions in the record covering same. Appellant also made a motion to continue the case for the want of the testimony of certain witnesses. This point was not preserved by bill of exceptions and none of the matters mentioned in said objection to going to trial or motion for continuance in the absence of bill of exceptions can be considered by this court.

2. Appellant made a motion to quash the bill of indictment, or the second count in the bill of indictment, the first count having been

dismissed by the State, on the ground that it failed to allege that appellant was a male. It is a sufficient answer to this motion to quash to say that the indictment is in the usual form and that the court correctly refused to quash the same.

3. Appellant, before the trial of the case, made a motion for change of venue on both grounds of the statute; that is, that prejudice existed so great in the county that he could not obtain a fair trial, and because there existed a dangerous combination of influential persons that would prevent him from obtaining a fair trial. This motion was supported by the affidavits of two persons and when filed the State filed a controverting affidavit made by the district attorney in which affidavit it was stated that the supporting compurgators, Killingsworth and Socten, had not sufficient acquaintance and knowledge of the people throughout Swisher County with reference to the matters contained in said statement and affidavit, and had not sufficient information with reference to the matters in said motion contained as to justify their statement that prejudice existed in Swisher County against appellant; that they were wholly unacquainted with the feelings and condition of the sentiment in Swisher County in relation to the case, and that they had not been over the county sufficiently to form a correct idea with reference thereto and are mistaken as to the extent of prejudice. When this affidavit was filed on the part of the State, appellant demurred to the same on the ground that it was insufficient in that it did not specially controvert the second ground of the motion, to wit: the combination. The court overruled the demurrer and directed that the parties proceed to offer testimony. We are inclined to hold that the affidavit made by the district attorney was sufficiently specific to make an issue in the case. The statute provides that the State may controvert the defendant's showing in an affidavit attacking either the credibility of the witnesses or his means of knowledge. The affidavit of the district attorney says that these witnesses were not sufficiently acquainted with the people of Swisher County and did not have sufficient information and knowledge with reference to the matters in said motion contained and were not sufficiently informed as to justify them in making the statement that prejudice existed in the county. In the case of Davis v. State, 19 Texas Crim. App., 201, and in the case of Carr v. State, 19 Texas Crim. App., 635, this court held that when a motion was made by the defendant for a change of venue supported by the affidavit of two credible persons, as provided under article 578 of the Code of Criminal Procedure, if no controverting affidavit is made attacking the credibility of the witnesses or means of knowledge, the defendant would be entitled to a change of venue, as a matter of right. But where the affidavit is made it raises an issue of fact to be tried by the court, and we think that under the provisions of article 583, Code of Criminal Procedure, that the motion for change of venue

may be attacked by an affidavit which questions the credibility of the persons making the affidavit or their means of knowledge and when an issue is thus formed the court shall try the same. We think that this article of the statute should be given a broad meaning and that the words "means of knowledge" should not be given a restricted or limited meaning and when the State files an affidavit saying that the compurgators had not the information and were unacquainted with the condition of things in the county and their means of knowledge was limited as to the matters set up in the application for change of venue, it was sufficiently stated to raise the issue to be tried by the court. But if it should be held that the affidavit was not sufficient to make an issue to be tried, yet, if the court proceeds with the trial of the issue in the court below and the defendant offers proof to show that the prejudice existed, or the proof established that prejudice did not exist, how is appellant in a condition to complain before this court? In the Davis case, *supra,* the court speaking through Judge Hurt, says: "Now, while the court may have erred in overruling the defendant's exceptions to the answer controverting the supporting affidavit, the defendant and the State, without any objections upon the part of defendant, went fully into this matter by examining the compurgators and a number of other witnesses, not only in regard to the existence of prejudice, but as to the means of knowledge of the supporting affiants. Appellant might have objected to the introduction of any evidence until a legal issue was formed; but this was not done, and it does not appear that any incompetent evidence was received upon the trial of the issue, though not formed according to article 583. We are not able to perceive in what manner the rights of appellant have been affected in this matter, at least, not to such an extent as would require a reversal of the judgment." In the Carr case, *supra,* the court says: "Notwithstanding there was no issue formed between the parties upon one of the grounds for change of venue relied on by defendant in his application, still he proposed to prove affirmatively: 1st. That there was such combination against him; and 2d, that in fact there was such prejudice in the county against him that he could not obtain a fair and impartial trial." Therefore, if appellant went into the trial of the case and the court heard the testimony pro and con and determined the point of fact that there was no such prejudice nor combination, how or in what manner could the appellant be injured? We, therefore, hold that the affidavit made by the district attorney was sufficient to raise the issue; and, second, that the appellant, having offered testimony in support of the issue, the State would have the right to combat same and for this reason we overrule the bill of exceptions questioning the manner of proceeding in the court below. This bill of exceptions further contains the testimony offered by the

State and appellant on the issue and this testimony, we think was sufficient to justify the court in refusing to grant the change of venue.

4. On the trial of the case, after the court had delivered his main charge to the jury, appellant requested several special charges. The first of these charges was a request that the jury be instructed that the degree of force as applied to rape must be such as to overcome all resistance that could be put forth by the woman, "and though a man may have had carnal knowledge of a woman by force and without her consent, if when the time and place of the commission of said act and the relative strength of the parties is considered and taken into consideration the woman could have avoided said carnal knowledge by any resistance on her part, not used by her at the time, or by anything she could or should under the circumstances then surrounding. her have done, and that would have avoided the carnal knowledge with such man, then such·carnal knowledge would not be rape."· We can not give our consent that this charge is correct either abstractly or as applied to the facts of this case. To hold that it would not be rape if the woman could have avoided said carnal knowledge by resistance not used by her at the time or by anything she could or should have done under the circumstances then surrounding her, would be demanding of the woman the exercise of cool and calm judgment both as to the exercise of resistance and a process of reasoning on her part that under the excitement of the moment would not only be unreasonable but unjust to demand of any one. This charge requested states that though the party intends to have carnal knowledge by force and against her consent, yet, it makes a demand upon her that is more than the law or reason requires and if this is to be the rule that should obtain in the trial of rape cases, we had as well wipe from the statute books the law of rape. To call upon a woman who had been unlawfully and ruthlessly assailed, who had been assaulted, who had been raped by the superior brutal force of a large and powerful man, and to say that she must take time, or could take time· to weigh and balance every act that she should do under the circumstances, is to call upon her, and require the doing on the part of the woman that that is both unreasonable and unjust. The court correctly refused ,this special charge.

5. The second special charge requested was to the effect that in order for violence to constitute an assault, the person using such violence must know at the very time such violence is used that the person upon whom it is used is not consenting thereto either directly or indirectly, and he must have no reasonable ground for believing that such violence will not be consented to or acquiesced in by the person upon whom such violence is used, and, unless the jury should believe that the assault and violence used was not consented to by the prosecutrix that they would acquit. We have been unable to find either ·

in reason or law a justification for this charge. By what kind of process of reasoning can it be said that where a violent assault is being made upon a party and the feelings of the party outraged that it can not be considered an assault if the party who inflicts the violence believes, or has good reasons to believe that the party is consenting to same? The court correctly refused this charge.

6. Special charges Nos. 3, 4 and 5 all are charges where the appellant requested the court to single out certain evidence in the case and by a process of reasoning eliminate from their, the jury's, consideration this testimony. The court is not required to pick single pieces of testimony here and there and direct the jury how it should be weighed or what effect it should have upon their mind in reaching certain conclusions. This character of charging would, if followed out, result in confusing the matters before the jury in such way as that they would be unable to reach a legitimate and rightful conclusion upon the whole case. These charges do not raise issues to be submitted to the jury but are requests on the part of appellant that the court should direct the jury that they should reach their verdict by a process of elimination. The court rightfully refused all these special charges.

7. Bill of exceptions No. 2 complains that the appellant was denied the right to ask the prosecutrix, Mrs. Anna Murray, while on the stand if she did not recognize the fact that conduct of hers and conversations she had had with men was calculated to produce a wrong impression in the minds of men who did not know her, and that if she had been permitted to have answered the question she would have answered that she did recognize the fact that such conduct was calculated to make men believe that she was not what a lady ought to be. The court correctly sustained the State's objection to this testimony. The explanation of the judge to this bill of exceptions states that the appellant was allowed all latitude in the examination of the prosecutrix; that he was permitted to inquire of her as to her conduct and conversations with different men. How the intentions or the conclusion that the appellant might have reached as to whether the prosecutrix was a lady or not could have been aided by any conclusion formed in the mind of the prosecutrix, we are not advised. That the prosecutrix may have concluded in her own mind that her conduct did not leave a good impression, could throw no light upon any issue in the case.

8. Bill of exceptions No. 3 complains that the State was permitted to ask of the witness Edwards while on the witness stand what the prosecutrix Mrs. Murray said to him when she met him after her house had been broken into. This witness answered that he lived in about 150 feet of the residence of Mrs. Murray; that he heard a disturbance at Mrs. Murray's house, had seen a man some fifteen minutes before prowling around the house; that when he heard some one scream he

ran to his back door and that Mrs. Murray told him that some one had bursted into her house and insulted her and when asked who it was she replied: "I don't know his name but I know the man. It is the same man who came to sell me a lot with Jim Brooks." This was objected to for the reason that it was hearsay, irrelevant and immaterial and not said in the presence of the defendant. In the explanation to the bill the court states: "The testimony showed that this statement was made as soon as she ran from the house, but a minute or so after the disturbance and the testimony was admitted as a part of the res gestae." The witness Edwards testified that on the night in question he was up with his family from midnight until 3 o'clock in the morning and that about 2:15 o'clock in the morning he saw a man pass around to the south end of Mrs. Murray's house; that the moon was shining brightly; that he passed to the west side of the house; that he, witness, went back in the house and, he says, that in about fifteen minutes he heard some one scream; that he jumped up and ran and met the prosecutrix at his back door; when the prosecutrix stated to him the facts as set out in the above bill of exceptions. He further stated the woman was very much excited, frightened and nervous, and that he judged the man to be about six feet tall. The proof showed that the appellant was a man six feet tall and weighed over two hundred pounds. We think under all the rules that this testimony was admissible as res gestae. The prosecutrix had to go but the short distance of 150 feet; she was heard to scream and the witness rushed out of his door and met her, prosecutrix, who said that some one had bursted in her house and insulted her and that she knew who it was but did not know his name. Whatever the prosecutrix said immediately after the assault to rape, and what was said to her in answer, is equally evidence. Castillo v. State, 31 Texas Crim. Rep., 145. In Price v. State, 35 Texas Crim. Rep., 503, this court held that the statement of prosecutrix to her mother when she reached her home if the same was so closely connected in point of time and the declarations were spontaneous and sprang out of the assault such statements to her mother would be admissible. The case of Sentell v. State, 34 Texas Crim. Rep., 260, was a case very much like this. Shortly after the assault prosecutrix met one Morris. The prosecutrix seemed to be very much excited and had the appearance of having been crying, she was trembling and told the witness that the appellant had insulted her. The court held that this testimony was admissible as part of the res gestae. And in that case the court further held the length of time elapsing between the assault and the statement was rather to its weight than its admissibility. We think this testimony was clearly admissible as part of the res gestae.

9.  Appellant's fourth bill of exceptions is to the action of the court in not allowing appellant to prove by the witness Dr. Clark on cross-

examination that he believed the guilty party was some other than the appellant. The following question was propounded to the witness: "You, at the time you talked with the officers about the case, with the· knowledge you had of it prior thereto, believed the guilty party was some other than the defendant, did you not, and on what did you base said opinion?" The State objected to this question and the defendant contended that the testimony was material and admissible because of the intimate relations existing between the witness and the prosecutrix and because of the description that she had given of the man who had assaulted her fixed in the mind of the witness, an opinion that it was not the appellant. The court qualifies this bill as follows: "This bill is approved with the explanation that the witness had already testified for the defendant fully as to all inquiries and no pertinent legitimate question was asked the witness as to any other party having committed this offense, but was merely.asked 'upon what he had based his opinion,' which the court held was a question for the jury and this witness was permitted to testify to all facts in his knowledge that would throw light on the transaction and his opinion, or the general question upon what he based his opinion the court held was not admissible." We think that this testimony was not admissible as it called for the opinion of the witness.

10. Bill of exceptions No. 5 was ·to the action of the court in not permitting the defendant to prove by the witness Mills that Dr. Clark in a conversation with him told him, Mills, that Mrs. Murray had stated to him, Clark, soon after the occurrence that she did not know who the man was that broke into her house; that when Clark was on the stand he was asked if he had told Mills this, and this Clark denied; and that if Mills had been permitted to answer the question he would have testified that Clark did tell him the above. When Mrs. Murray was upon the stand she had been examined fully and carefully as to all statements she had made with reference to this matter. We think that this testimony was inadmissible and that it was an immaterial matter as to what Clark may have told the witness Mills. He may have said that Mrs. Murray told him or did not tell him a certain thing. This would be carrying the impeachment doctrine a little too far and bringing in collateral matters and immaterial matters. When Mrs. Murray was upon the witness stand and had testified and then when Clark had been placed upon the stand and asked if Mrs. Murray had not told him she did not know who it was, the appellant would be bound by that answer. To have extended the rule any further Mills might have been placed upon the stand and testified that Clark did tell him that and then Mr. Smith might have been placed on the stand to prove that Mills told him, Smith, that Clark did not say any such thing and then Jones might have been placed on the stand and testified that Smith told him that Mills did say

that Clark told him so and so. We, therefore, hold that this testimony was irrelevant on a collateral matter and that the court did not err in excluding it.

11. Bill of exceptions No. 6 is to the action of the court in not allowing the defendant to ask the witness Denny: "What is your best judgment, knowing your wakefulness, as to whether or not the defendant Lemons, left that bed and that room during that night?" That if the witness had been permitted to answer he would have answered that the appellant could not have done it without waking him. This bill of exceptions is approved with this explanation: "This witness was permitted to answer the question complained of and testified that in his best judgment Lemons did not leave the house that night." The appellant having accepted the bill with the qualification to it by the judge, is bound thereby and we must hold that the bill of exceptions is without merit.

12. When the appellant was on the witness stand testifying in his own behalf, he was asked the following question: "Who was your wife before you married her?" If appellant had been permitted to answer the question he would have testified that his wife was the daughter of one Armstrong who was a highly respectable and reputable citizen and his family stood well among the people. How it could throw any light on this case as to whether the appellant was a married man or not a married man, we are unable to see. The appellant claims this testimony would have inured to his benefit. How it would have inured to the benefit of appellant we are unable to see. It is not of such importance as to require consideration at our hands.

13. The eighth bill of exceptions is to the action of the court in allowing the State to prove by the witness Edwards who had been recalled by the State to testify to a conversation he had with the defendant's witness Denny after the house of Mrs. Murray had been broken into. This witness stated: "I spoke of the occurrence to him and I said that the man looked rather low and chunky at first and it seemed as he was stooping, but as he went on the north side he was a taller man and a larger man; that I could see him plainly there in the moonshine, and I just remarked that he was about the height of the man you spoke of, Goodnight." Denny had been placed on the stand and testified that Edwards told him that the man looked like Goodnight. Edwards was brought back and asked what was the statement that he made to the witness Denny and this was the reply. We think that this testimony was admissible under the circumstances and that the court did not err in allowing the question.

14. The 19th and 24th grounds of appellant's motion for new trial simply states: Because the court erred in giving in charge to the jury section or paragraph No. 4 of his charge and erred in giving paragraph 5 of his charge; and erred in giving paragraph 9 of his

charge and erred in giving paragraph 10 of his charge and erred in giving section or paragraph 1 of his charge, etc. These grounds of the motion complaining of the charge of the court can not be considered. They are too general. They do not point out how or wherein the court erred in his charge. The lower court was not advised of any error committed in the charge by this motion, neither is this court. It gives this court no more information than simply if he had said in his motion for new trial, the court erred in his whole charge to the jury. Under the rules of practice as prescribed and followed by this court, these objections are too general to be considered. We have examined the charge of the court and are constrained to believe that the charge of the court below was a most admirable presentation of the law as raised by the testimony in this case; that appellant has had a fair and impartial trial; that there is no doubt but what he was the party who was at that house that night. The prosecutrix is absolutely certain of his identity and if he was the party his conduct, or the conduct of whoever was at that house, was most outrageous and if appellant is the guilty party he may congratulate himself at the consideration he received at the hands of the jury.

Believing the court below committed no error the judgment is in all things affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

May 11, 1910.

McCORD, JUDGE.—On a former day of this term of the court the judgment of the lower court in this case was affirmed. Appellant has filed a motion for rehearing in which it is insisted that this case should be reversed and dismissed because the indictment against the defendant herein was returned at a term of court not authorized by law and by a grand jury which had no legal existence, for the reason that the Act of 1909, if it is constitutional, was clearly intended to repeal the Act of 1905, except as to the spring terms of the District Court held during the year 1909, and the indictment in this case having been returned at the regular July term of the District Court and which was clearly in conflict with the Act of 1909, and it therefore had no legal existence and was held without authority of law. The Act of 1905, which created the 64th Judicial District and fixed the terms of court therein, and which remained in force until the taking effect of the Act of 1909, provided that there should be held terms of court in Swisher County on the third Mondays after the first Mondays in January and July and may continue in session three weeks. The Act of 1909 took effect August 1, 1909, by its terms. The third Monday after the first Monday of July, 1909, was the 26th day of July. The indictment herein was returned on July 27th. The meet-

ing of the court on July 26th was in accordance with and authorized by the law in force at that time and which remained in force at least until August 1st, following the date of the taking effect of the Act of 1909. The exhibits attached to appellant's motion for rehearing show that the court in Swisher County which met on July 26th and at which this indictment was returned adjourned on July 30th. The Act of 1909 does not say that only the spring terms of court shall be held under the Act of 1905, but merely that "this Act shall not conflict with any of the spring terms of court now being held under existing laws." The Act of 1905 was in force and remained in force until the taking effect of the repealing clause of the Act of 1909, which was on August 1. This Act had no effect until that date, and the authority of the Swisher County District Court to be in session on July 27th, was exactly what it would have been had the Act of 1909 never passed. Therefore the term of court having been organized under the then existing law it can not be said that the indictment returned at that term of the court would be invalid.

Appellant further contends in his motion for rehearing, that if the term of the court beginning July 26th at which the indictment was returned was a proper term, then same, being a regular term of said court, the county having already in January had one regular term of court, the term beginning August 30th under the Act of 1909, was void under the Constitution, because: "The Constitution only authorizes two regular terms and they had been had if the July term was a regular and legal one." We hold that section 7, article 5, of the Constitution, is not subject to this construction. It does not forbid more than two regular terms of court. It only requires as many as two regular terms in each year, the language of the Constitution being: "He (the district judge) shall hold the regular terms of his court at the county seat of each county in his district at least twice in each year." We therefore hold that any county may have more than two terms of the District Court, if provided by law, and that this ground of the motion is without merit.

Appellant contends that if this court should hold that the indictment was returned at a regular term of court authorized by law and for that reason the indictment should be held valid, then the judgment rendered against him is void for the reason that the term of court at which the same was rendered, being a regular term and purporting to be held in pursuance of the Act of the Thirty-first Legislature, was a term not authorized by a valid and constitutional law for the reason that under said Act it was impossible, taking it together with the Act of 1905, for Hale County, one of the counties of said district, to have two regular terms of court during the year 1909. The Act of 1905 in force prior to the taking effect of the Act of 1909, provided that the District Court should be held in Hale County on the

13th Monday after the first Monday in January and July and might continue in session for four weeks. Under the Act of 1905, Hale County had held one term of court which was in April of that year. Her second term of court, under the Act of 1905, would have made the beginning of the fall term of court in Hale County commence in October. The Act of 1909 provides for the holding of court in Hale County on the 18th Mondays after the first Mondays in February and August of each year and may continue until the business is disposed of. This would make the commencement of court in Hale County be on December 6th instead of October, as provided under the law of 1905. All of the terms of court in this district were limited in duration, except Hale County, and there it was provided the court might remain in session until the business was disposed of or until the commencement of the circuit on the first Monday in February, in Floyd County. The contention is here made that the language of the Constitution which provides that the district judge shall hold court in each county at least twice in each year, means two full and complete terms of court beginning and ending within each calendar year. We do not think this contention is sound. The language of the Act specially provides that it shall not interfere with the spring terms of the court. It is true this court has held in a number of cases that where an Act of the Legislature changes the time of holding courts in any judicial district, and if such change shall so affect the holding of the terms of court as to deprive any one county in said district of its two constitutional terms of court within the year, said Act shall be postponed and shall not go into effect until such time as will not deprive one county of its constitutional terms of court, and that it was not so intended that said Act should take effect so as to leave such a result. See Ex parte Thompson, 123 S. W. Rep., 612, and Nobles v. State, 123 S. W. Rep., 126. The same question was before our Supreme Court in the case of Bowden v. Crawford, 125 S. W. Rep., 5, and that court, speaking through Chief Justice Gaines, stated: "This is an important question, and one that is fraught with trouble. We therefore deem it best to acquiesce in the ruling of the Court of Criminal Appeals upon the point, and therefore answer the first question: That insofar as the Act in question failed to provide Borden County with two terms of the District Court for the year 1909, it is without effect, and leaves the Act of 1905 in force for the first circuit of the courts." And further held that the Act of 1909 was inoperative for the spring and summer terms of the court. We are not willing to extend the doctrine any further than was announced in the Noble and Thompson cases, *supra.* The law is not unconstitutional. The decisions simply go to the extent that it was not intended that the law should have such construction as that a county in a given district would be deprived of its two constitutional terms of court each

year and that the Act would become operative, when this condition of things would not arise. This law had to go into effect at some time. The Legislature saw the difficulty and provided that it should not go into effect during the spring terms of the court and by its language postponed the going into effect of said law. That some inconvenience might arise in the change of any law must be expected and simply because a term of court may be postponed by the operation of the law whereby one of the two terms of court for the year may by some contingency run into the second year, would not be sufficient reason to hold the Act of the Legislature without effect. It may be that the meeting of the term of the court in Hale County in December, 1909, may have disposed of the business during the year 1909, and simply held over to meet contingencies that might arise, until the beginning of the February term in Floyd County, but that would be no reason for this court to hold the Act invalid. The Act was not invalid under the law, but simply for convenience and to meet the requirements of the Constitution, the courts have wisely held that the going into effect of the Act should be postponed until such time as that the county would not be deprived of its two terms of court during the year. We therefore hold that this contention of appellant is without merit and that appellant was tried at a legal term of the court and under the law, valid at the time of his trial. As has been wisely said: "Until it is shown to be plainly and manifestly in conflict with the Constitution the presumption of its validity will hold good; all doubts will be resolved in its favor. Every presumption is in favor of the validity of legislative acts." Sutherland's Statutory Construction 2d ed., sec. 497; see also the case of Read v. Levy, 30 Texas, 738.

The other questions raised in the motion for rehearing were all reviewed in the original opinion, and believing that they were correctly decided and that the motion is without merit, the same is in all things overruled.

*Overruled.*