## Lee Scott v. The State.

### No. 803. Decided November 16, 1910.

**1.—Assault to Murder—Charge of Court—Specific Intent to Kill.**

Where, upon trial of assault to murder, the evidence showed that the difficulty arose very suddenly, and that it was quite questionable whether defendant intended to kill the deceased, the court should have submitted defendant's special instruction that the jury could not find the defendant guilty of assault to murder unless there was a specific intent to kill on the part of the defendant.

**2.—Same—Charge of Court—Defense of Another.**

Where, upon trial of assault to murder, the evidence raised the issue that the defendant was acting in the defense of his brother, the court should have submitted this phase of the case.

**3.—Same—Verdict—Grade of Offense.**

It is better practice, in case of a graded offense, for the jury to state in their verdict explicitly the precise offense of which they find defendant guilty; and this should be done in a case of assault to murder where the defendant is found guilty of that offense.

Appeal from the District Court of Comanche.   Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. P. Graham* and *Kearby & Kearby,* for appellant.—On the question of the court's failure to charge on specific intent to kill:   Bonner v. State, 29 Texas Crim. App., 231.

On the question that the verdict must state the grade of offense: Aycock v. State, 55 Texas Crim. Rep., 142, 115 S. W. Rep., 590; Styles v. State, 37 Texas Crim. Rep., 599, 40 S. W. Rep., 498; Millard v. State, 59 S. W. Rep., 273, and cases cited in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—The appeal in this case is prosecuted from a conviction had in the District Court of Comanche County on May 2 of this year, adjudging appellant guilty of assault with intent to murder, and assessing his punishment at two years confinement in the penitentiary.

The facts of the case briefly show that Will Smith, the assaulted party, was a young lad about sixteen years old at the date of the difficulty.   Pearl Scott, brother of appellant, who figured in the transaction, was a little older, whereas appellant was a man about grown. The difficulty occurred at a dance, which has proven a frequent occasion of broils and quarrels, and that it came up from a trifling remark addressed by Smith to Pearl Scott with reference to a cigarette.   At the first words of difference between Smith and Pearl Scott, according to the testimony of Smith, appellant walked up and said to him: "If you want anything get on me," when he said: "I don't want to have any trouble," and walked off from him.   That he first walked off about ten feet, and then about eight feet farther, and then about two steps, and after he had made the last steps he picked up a post auger which he had in his right hand, and was standing leaning back on it and had it touching his hip when Lee Scott walked up, caught hold of the post auger, and both of them pulled back on it, when he, Smith, went to jerk it, and it fell back over on Pearl Scott's head.   He says that appellant commenced cutting him while he had the post auger; that he never hit appellant at all, and never struck at him; that when appellant first came up he said to him: "Come out here," when he replied, "I don't want to have any trouble, but if you have to fight I will try you."   It seems from the testimony of the witnesses that the striking of Pearl Scott by Smith was an accident, and that he so stated at the time.   Smith was very severely stabbed, but fortunately recovered, though he says the wounds still pain him yet.   Smith also testified that the knife blade was about

three and one-half inches long. It is also disclosed by the record that there had been no unfriendliness between the parties up to this occasion. Smith says he was not drinking, and had not seen appellant drinking any. This is the substance, in a general way, of the State's case as to how the difficulty arose, and if believed would have shown an assault on Smith without any justification or excuse. Appellant and some of his witnesses gave a rather different account of the transaction. He says that while the young people were in the house where they had been dancing, that Smith said to him: "Why didn't you let me know about this party and I would have brought some girls up here," when he replied: "I thought everybody knew it," or something like that, and that his brother spoke up and said: "Are you the man that asked me for the snipe?" and he said that he was, when he, appellant, said: "Will, here is a cigarette," and "I gave him a full sack of tobacco which I never got back." That Smith then said to Pearl, "I don't want your damn old snipe," when Pearl replied, "You couldn't get it now if you wanted it." Smith replied, "If I wanted it I would take it," when appellant replied, "Smith, you couldn't take nothing," when Smith said, "What do you know about it," and "I told him that I might know a good deal about it. He told me to wait until he got that cigarette rolled and he would show me." That all the parties walked out of the house when Smith came up to him and said: "Lee, I don't want to have any trouble," to which he replied, "All right, we will just drop it right here," when Smith said to him, "Though if you want anything I will back what I say," to which appellant replied, "All right, I am not afraid of you," when Smith picked up the post auger and said, "Turn him loose, boys, I will knock hell out of him." That at this time no one was holding appellant and he turned, and about the time appellant got to Smith, he struck at appellant with the post auger, when he threw up his left hand and knocked the lick off, and struck at Smith with a knife, and about the third lick he dropped the post auger and that he did not strike him any more. That there was no one holding him when he struck him. That Smith did not try to get away from him, but stayed there, and when he dropped the post auger he stepped back and said, "Boys, he cut me with his knife." Appellant also testified that he and Smith were friendly before that; that so far as he knew Smith had nothing against him, and that he had nothing against Smith, and that he did not strike at him with a knife until after Smith had struck at him with a post auger. That when he struck at him with the post auger he knocked the lick off and it came down on his brother Pearl's head. He further said he could have cut Smith all to pieces if he desired to; that he did not want to kill him at all; that he just wanted him to drop the post auger. There was considerable testimony by other witnesses along the same general lines.

1. On the trial appellant, through his counsel, requested the court

to give the jury the following special charge: "That should you find from the evidence that defendant cut said Will Smith with a knife, but that he did not do so with a predetermined intent on his part to kill said Smith, but only to disarm him, or to defend himself against an attack by said Smith with a post auger, if you find such attack was made then defendant would not be guilty of assault to murder as charged, because you are instructed that the offense with which defendant is charged can not be committed except where there is a premeditated, specific intent to kill on the part of defendant, without adequate cause, and if you have a reasonable doubt on this point, of defendant's guilt, arising in your minds from the evidence you will give him the benefit of such reasonable doubt."

We think the substance, at least, of this charge should have been given. It is elementary and well settled in this State that a defendant is entitled to have submitted to the jury every question fairly raised by the evidence, and we think in view of appellant's testimony he was entitled to a direct and particular submission of this issue to the jury, at least as affecting the grade of the offense of which he might be convicted.

2. We think also that the charge of the court is subject to the criticism that it does not submit the issue of the defense by appellant of his brother. He would, under the circumstances, and under the law of this State, have the same right to come to the defense of his brother as he would to defend himself, and we think that the testimony, taken as a whole, fairly raises the right of appellant to defend as against an attack by Smith upon his brother Pearl. Guffee v. State, 8 Texas Crim. App., 187.

3. We call attention, in this connection, to the fact that the verdict does not state directly of what grade of offense appellant was found guilty. It may be since his punishment was assessed at a term in the penitentiary, which would have been impossible except on the theory that he was found guilty of assault with intent to murder, that it would sufficiently appear therefrom that it was the intention of the jury to find him guilty of assault with intent to murder. It is a better practice, however, in case of a graded offense for the jury to state in their verdict directly and explicitly the precise offense of which they find a defendant guilty. Evans v. State, 57 Texas Crim. Rep., 174, 122 S. W. Rep., 393; Hays v. State, 33 Texas Crim. Rep., 546; Moody v. State, 52 Texas Crim. Rep., 232.

For the errors pointed out the judgment of conviction will be reversed and the cause remanded.

*Reversed and remanded.*