State, 55 Tex. Cr. R. 444, 117 S. W. 141; English v. State, 85 Tex. Cr. R. 456, 213 S. W. 632; Vernon's Tex. Crim. Stat. vol. 2, p. 694, and cases there collated. It is manifestly in contravention of the legislative command embraced in article 787 of C. C. P., which reads thus:

"In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceedings previous to the return of a verdict, make any ·remark calculated to convey to the jury his' opinion of the case."

The evidence to which the comment was addressed was the appellant's entire defensive theory.

In the absence of a brief pointing out and analyzing the part of the act of the Legislature relied upon and the construction thereof ·contended for, we refrain from expressing· any opinion as to whether this testimony was such as to .authorize the jury in rendering a verdict of acquittal; that is to say, whether it presented a defense. There is no question, however, in our minds that it was admissible and material for the consideration of the jury upon the amount of punishment to be assessed. The verdict was much above the minimum prescribed by law.

In our judgment, the comment of the court upon the mitigating facts requires a reversal of the judgment; and it is so ordered.

---

## CURRY v. STATE. (No. 8012.)

(Court of Criminal Appeals of Texas. Dec. 12, 1923. Rehearing Denied Jan. 16, 1924.)

**1. Witnesses ⬅337(6)—Inquiry as to another indictment held proper, as affecting defendant's credibility with respect to matters affecting punishment.**

Where defendant pleaded guilty to matricide, but contended his mental condition made him guilty of manslaughter only, it was not error for state, as affecting credibility, to ask him as a witness whether he was not then under indictment for murder in another state.

**2. Criminal law ⬅695(4)—Defendant, objecting to evidence, should support his objection so as to show its inadmissibility.**

In murder prosecution, where defendant was asked as a witness for purpose of affecting his credibility whether he was not then under indictment in another state; if defendant desired to object that the evidence sought related to a transaction too remote to affect his credibility, he should have interposed that objection and supported it.

**3. Criminal law ⬅1043(1)—Unsupported objection to evidence requires no review.**

Objection that state introduced proof of pending indictment for another offense, for another purpose than to affect defendant's cred-

ibility as a witness, must be supported by some facts beyond making of such objection, in order to require review.

**4. Criminal law ⬅925(1)—Time of deliberation of jury held not to show lack of· cool reflection.**

In prosecution for matricide, where facts were few and testimony short, and showed apparent lack of any sufficient justification for the killing, deliberation by jury for less than 20 minutes *held* not to show such haste and lack of cool reflection as to call for new trial.

**5. Criminal law ⬅957(1)—On, ,motion for new trial, jurors should not state how they considered legitimate evidence.**

On motion for new trial, jurors should not be heard to say that they did or did not consider, for certain purposes, evidence legitimately before them.

**6. Criminal law ⬅923(2)—Jurors remark after retirement held not to show prejudice.**

In prosecution for matricide, remark of juror soon after retirement that he thought the son of a b——h ought to be hung *held* not to show serious passion or prejudice.

**7. Criminal law ⬅723(3)—State attorney's argument held not to transgress rules.**

In prosecution for matricide, state's attorney's argument that there were too many murders in the county and death penalty in proper case was the only 'way to stop them did not transgress rules relating thereto.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Tommie Curry was convicted of murder, and he appeals. Affirmed.

Bryan Marsh and Gordon Simpson, both of Tyler, for appellant.

Tom Garrard, State's Atty., of Midland, and Grover C. Morris, Asst. State's Atty., of Devine, for the State.

LATTIMORE, J. Appellant was convicted in the district court of Smith county of murder, and his punishment fixed at death.

Appellant was convicted for killing his mother. There is ·no denial of the fact that he shot her, and that from such shooting she died. Deceased was the mother of 10. children, among whom was appellant, and it is made to appear from the record that she had never been married. A daughter of deceased testified that she was 20 years old and lived with her mother; that on the night her mother was killed witness was in bed .in a room adjoining that occupied by deceased. Witness heard some one knock on her mother's door about 1:30 o'clock in the morning, according to the judgment of the witness. She testified: That it was appellant who knocked on the door, and that he told her mother to open the door. He said, "Mama, Mama, get up and open the door." That deceased got up, and while unlocking the door said, "Son, what you doing up this time of

night?· Looks like you ought to be at home with your wife and in bed with your wife." Witness heard the door open, and heard something said about lighting a lamp—that appellant told deceased to light a·lamp. The next thing witness heard was a gun fire. Deceased had said nothing more. The appellant then ran out of the house, and when he got on the ground hollered that "he was a G——d d——n bad son of a b——h." This witness testified that on Wednesday morning before the killing appellant came to her mother's house and asked the latter for $20. One of the sons of deceased had been killed during the World War, and deceased was receiving regular payments from the government on account of the loss of said son. This witness said that when appellant came to his mother and wanted money she told him that she had none because she had not cashed her check. Witness said that on Saturday morning following the Wednesday on which appellant came and wanted money from his mother, he came back down to her house, but she heard him say nothing about money then. A confession made by appellant, in accordance with the terms of article 810 of our Code of Criminal Procedure, was also introduced on behalf of the state, and in same appellant admitted that he had made up his mind to kill his mother, and that about 12 o'clock on the night of the homicide he took a shotgun from where he was living and went down to his mother's house, called her, and she answered and came to the door and was lighting a lamp at the time he shot her.

[1] Appellant testified in his own behalf, admitting that he killed his mother, but claiming that he became excited and angry over the proposition that she was keeping a white man and giving him the money resulting from the insurance policy held by his dead brother. If we understand appellant's contention, it is based on the proposition that he was in such a mental condition at the time he shot his mother as that he would be guilty of nothing more than manslaughter.

Appellant presents several bills of exception, the first of which complains that, while giving testimony in his own behalf, the state was allowed to ask him if he was not then under indictment for murder in the state of Arkansas. His contention in this regard is that he had entered his plea of guilty to the indictment herein, and, this being true, it was improper to allow the state to ask him the question above referred to, even though only admitted for the purpose of affecting the credibility of the accused as a witness.

The question seems to be one of first impression in this state. An ingenious argument is presented by able counsel for the appellant. We find ourselves, however, unable to assent to the soundness of said argument. Our statute requires the introduction of ,testimony in a felony case upon a plea of guilty; the purpose of which is to enable the jury to properly decide the question of punishment. One charged with murder, who pleads guilty to said charge, could hardly be held by such plea of guilty to have agreed to accept the highest penalty which could be affixed by the jury for such offense. Though admitting that he had violated the law forbidding homicide he might introduce testimony seeking a mitigation of the punishment or its reduction to a term of years less than the maximum. We would not think the state could be held bound not to attack the credibility of witnesses introduced on behalf of the appellant—the effect of whose testimony would be to reduce the punishment or to mitigate the crime. As we understand this record, the testimony of the appellant was along this line. While admitting that he killed his mother, he was testifying to facts which, if true and believed by the jury, would probably have the effect of reducing the penalty. He relying upon his testimony for that purpose, it would seem well within the province of the state to show by any legal means within its power that he was not worthy of credit as a witness. We do not think the contention of appellant in this regard sound.

[2] Regarding the claim in support of the second bill of exceptions, that the state did not show that the charge of murder in Arkansas against appellant was not too remote to affect his credibility, we observe that one who seeks to interpose an objection to the introduction of testimony must assume the burden of presenting such an objection as will enable the court to say that the matter is not admissible. If appellant desired to interpose an objection that the evidence sought related to a transaction too remote to affect his credibility, he should have interposed that objection and supported same.

[3] The bill of exceptions complaining of the fact that the state introduced proof of the pending of an indictment for another offense, not genuinely for the purpose of affecting the credibility of the party thus attached, must be supported by some facts beyond the mere making of such objection, in order to bring before this court any question for review.

[4, 5] By appellant's bill of exceptions No. 4 it is urged that soon after the retirement of the jury and while deliberating upon the case, a juror said that he thought the son of a bitch ought to be hung, and further that the jury returned into the courtroom within 15 or 20 minutes with a verdict of guilty, assessing the death penalty, and that these facts, taken together, showed such haste and lack of cool reflection and deliberation on the part of the jury as should have called for the granting of a new trial. The learned trial judge seems to have heard testimony upon the proposition thus presented, when the motion for new trial was before him, and

qualifies bill of exceptions No. 3 with the statement that 11 of the 12 jurors who tried the case testified and were questioned fully as to what occurred in their deliberations; that practically all testified that they considered all the testimony, and that they did not consider the testimony showing the defendant was indicted for murder in Arkansas in arriving at the penalty, because the court has instructed them that they could only consider this in passing on the credibility of appellant as a witness; that their verdict would have been the same if that testimony had not been introduced. We think such inquiry and the testimony heard of no moment, and that jurors should not be heard to say that they did or did not consider, for certain purposes, evidence legitimately before them. The authorities cited by appellant support the proposition that in all cases involving the life or liberty of a citizen, care and caution should be taken to avoid hasty judgments, and that the deliberations of the jury should be free from passion, prejudice, or excitement.

[6] The facts in the instant case were very few and the testimony short. It is to be presumed that the jury were considering the facts during the arguments and after they had received the charge of the court, and we are unable to say that the time taken by them for their consideration of the guilt of the accused and the fixing of his penalty was so short as that their verdict should be set aside. The enormity of the crime of matricide; the apparent lack of any sufficient justification for this killing; the method and manner of it as detailed; the shooting down of the defenseless mother by her son in the nighttime—were matters which might be passed upon in a comparatively short time and a conclusion arrived at. The remark accredited to the juror was one which reflects no credit upon him, but many men use language in expressing their feelings which does not sound well to the ears of ordinary men, and especially when coming from a juror, but such use would hardly suffice to show serious passion or prejudice.

[7] Appellant also has a bill of exceptions to the argument of the district attorney in closing the case for the state. It appears that he said there were too many murders in Smith county, and that the death penalty in proper cases was the only way to stop them. We do not think such argument a transgression of the rules relating thereto.

The jury in this case have seen fit to inflict upon appellant the extreme penalty of the law, and in such cases as is our custom we carefully scrutinize each step in the trial to determine if there has been that fair and impartial trial guaranteed by our Constitution. We have considered each of the matters presented but are unable to agree that the trial was not fair and the verdict just. An affirmance will be ordered.

### On Motion for Rehearing.

HAWKINS, J. All of the questions presented in the motion for rehearing were considered upon the original submission. The rule that a witness in a criminal case (including the defendant if he testifies) may be impeached by proof that he has been convicted of, or legally charged with, felonies or misdemeanors involving moral turpitude (if not too remote) has so long been adhered to by this court that we decline to be drawn into a discussion of the matter. We have been unable to perceive why the rule should not apply in the instant case. Notwithstanding the entry of the plea of guilty, appellant takes the witness stand. Why? Surely not to aid the state, but hoping the evidence he gives will be accepted by the jury as true and appropriated by them in mitigation of the punishment. If his testimony impinges on the interest of the state, we can see no valid reason why it may not be attacked in any legitimate way available, the same as if all issues were contested.

Believing all questions were properly disposed of in the original opinion, the motion for rehearing is overruled.