**Mark Conner MANSELL, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 35066.**

Court of Criminal Appeals of Texas.

Jan. 2, 1963.

Rehearing Denied Feb. 20, 1963.

James S. McGrath, Alfred S. Gerson, Beaumont, for appellant on appeal only.

Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The conviction is for assault with intent to murder with malice; the punishment, confinement in the penitentiary for twenty-five years.

At the outset, appellant urges his motion to reverse and remand the cause without consideration of the record, on the ground that he has been denied the right to perfect his bills of exception through no fault of his own.

The record reflects that on August 23, 1962, appellant filed six bills of exception with the clerk of the court, which date was the 90th day after the date notice of appeal was given. The following day, August 24, the court, upon his attention being called to the bills by the clerk, proceeded to examine them and by orders duly entered thereon refused to approve two of the bills, stating his reasons therefor, and approved four of the bills—one without amendment or correction and three with certain qualifications and corrections.

In his motion to remand, which was duly verified, appellant states that at no time was

he notified by the clerk of the court that the bills had been refused, qualified, or in any way changed or amended by the court and that it was not until September 12, 1962, when he went to the clerk's office, that he learned of the court's action.

Appellant insists that since he was not immediately notified by the clerk of the court's action in refusing the bills, as required by Art. 760d, Vernon's Ann.C.C.P., and did not receive notice of the court's action in time to file bystanders bills within the fifteen-day period provided for by Art. 760d, supra, that he was deprived of the right to perfect his bills and that the cause should be reversed and remanded.

While it is the clerk's duty under Art. 760d, supra, to immediately notify the defendant or his counsel that the trial judge has refused the bills of exception, it does not necessarily follow that where the clerk fails to give such notice the cause will be reversed and remanded. In passing upon bills of exception filed under Art. 760d, supra, and refused by the court after the time allowed by statute had expired, we have consistently declined to consider the failure of the clerk to notify the judge of the filing of such bills, and have considered the bills as filed and approved. We conclude that the same rule must be applied where the clerk fails to notify the defendant or his counsel that the court has refused his bills. Under the decisions of this court prior to the enactment of Art. 760d, supra, where an accused was entitled to have a bill of exception considered or the cause reversed because it was denied him, it has been the practice to consider the bill. Rosa v. State, 86 Tex.Cr.R. 646, 218 S.W. 1056; Blackshear v. State, 123 Tex.Cr.R. 111, 58 S.W.2d 105; and Stewart v. State, 137 Tex. Cr.R. 39, 127 S.W.2d 903.

The state's proof shows that on the night in question the injured party and his brother were traveling west on Highway 90 toward Dayton, in Liberty County, when the injured party drove his automobile around an automobile being driven by appellant. A companion was riding with appellant. Appellant then proceeded to overtake and pass the injured party's vehicle and the injured party again drove around the appellant's automobile. Appellant then passed the injured party's vehicle a second time and the injured party, in turn, drove around and passed appellant's vehicle for the third time. As the two vehicles were traveling down the road in the city of Liberty, appellant bumped the injured party's vehicle from the rear. Thereupon, both vehicles were stopped and the occupants got out. The injured party testified that as he was standing by his vehicle with his elbow on the door, appellant walked up to him and he asked appellant: " 'What's wrong with you?' "; that appellant then mumbled something and struck him on the side of the face with a broken beer bottle, which cut the left side of his neck in the region of the jugular vein. The proof shows that after he was struck, the injured party ran and was pursued by appellant. After the injured party ran around a building, two men drove up in an automobile and carried him to a hospital, where he was treated for his injuries and for shock.

It was shown by the hospital records that when admitted to the hospital the injured party was in a state of shock from loss of blood and had certain facial lacerations. A temporal artery had been severed, such being "one of the largest arteries running outside of the head supplying the entire scalp and this entire area of this side of the face, the left side," as testified to by Dr. Donald Paul Schulz, one of the attending physicians. At the time of his admission to the hospital, blood was spurting ten or twelve inches from the injured party's wound, his pulse was dangerously low, and he was given a large quantity of glucose and dextrane and transfusion of whole blood. The injured party was confined in the hospital for five days. Dr. Schulz testified that the injured party's wound was of a serious nature and that he would have died if he had not received adequate medical attention.

Testifying as a witness in his own behalf, appellant stated that after both automobiles stopped, the injured party and his brother got out of their automobile and advanced toward him; that he observed something flash in the injured party's hand and after the injured party struck him he grabbed a beer bottle which had fallen out of the automobile and struck the injured party with it. Appellant stated that the bottle was not broken until it struck the injured party, and further testified that he had no intention of taking the injured party's life and that he acted in self-defense.

The court submitted to the jury in his charge the issues of appellant's guilt of assault with intent to murder with and without malice, aggravated assault, simple assault, and his plea of self-defense.

We will discuss appellant's Bills of Exception Nos. 1, 2, and 4, which present his contention that the verdict returned by the jury was invalid.

■ The record shows that after the jury had deliberated for approximately thirty or forty minutes they returned into court with the following verdict:

"We, the jury, find the defendant guilty as charged, attempted murder with malice aforethought; and *a*cess the maximum penalty of twenty-five years imprisonment.

"Mrs. Helen Tillman
Foreman of the Jury"

The court, upon receiving the verdict from the clerk, inserted between the words "charged" and "attempted," in his own handwriting, the words "in the indictment" and then read the verdict to the jury, who stated that it was their verdict.

Appellant insists that the verdict returned by the jury was insufficient to support the judgment and sentence because it was not responsive to the crime charged; that it did not specify the grade of offense for which appellant was convicted; and that the court's attempt to correct the verdict without first securing the jury's consent and approval was improper.

We are unable to agree that the verdict returned by the jury was not responsive to the crime charged.

The indictment charged in a single count the offense of assault with intent to murder with malice aforethought. The jury, in their verdict, found appellant guilty "as charged." When construed in connection with the charge laid in the indictment, the verdict shows the jury's intention to find appellant guilty of assault with intent to murder with malice, and is sufficient. McGee, et al., v. State, 39 Tex.Cr.R. 190, 45 S.W. 709; Figueroa v. State, 71 Tex.Cr.R. 371, 159 S.W. 1188; Barnes v. State, 116 Tex.Cr.R. 222, 34 S.W.2d 605. Such intention being shown, the words "attempted murder" contained in the verdict may be treated as surplusage.

■ While the jury did not specify the grade of offense, the punishment assessed could only be applicable to the offense of assault with intent to murder with malice and therefore the verdict was sufficient. Scott v. State, 60 Tex.Cr.R. 318, 131 S.W. 1072; Lewis v. State, 86 Tex.Cr.R. 135, 217 S.W. 695.

■ The court's action in inserting the words "in the indictment" in the verdict without first securing the jury's consent would not vitiate the verdict, as it was sufficient without the words inserted by the court. Furthermore, the jury later ratified the verdict after the words were inserted. Scott v. State, 97 Tex.Cr.R. 105, 260 S.W. 864.

We have reviewed the authorities cited by appellant and find that in the cases cited, the jury in their verdict found the accused guilty of an offense not charged in the indictment. Such is not the case at bar.

■ We are unable to agree with appellant's other contention that because the

jury only deliberated between thirty and forty minutes before returning their verdict, the judgment should be set aside. In 42 Tex.Jur, Sec. 334, at page 425, it is stated:

> "There is no rule of practice or law fixing any specified time for the jury to deliberate, and so the return of a verdict shortly after their retirement cannot be successfully objected to."

See, also: Curry v. State, 96 Tex.Cr.R. 267, 257 S.W. 269.

■■■ By Bill of Exception No. 3 and informal Bill of Exception No. 1, appellant complains of the court's action in failing to require the court reporter to prepare a statement of facts in time for filing within ninety days after notice of appeal was given, upon affidavit being made by appellant of his inability to pay court costs. The record reflects that the court did order the court reporter to prepare a statement of facts in narrative form, which was prepared and filed in the cause after the ninety-day period. The court did not err in authorizing the statement of facts to be prepared and filed more than ninety days after the date notice of appeal was given, as the court was authorized under Sec. 4 of Art. 759a, V.A.C.C.P., to extend the time, upon good cause shown, for filing the statement of facts after such period of time. Nor may the appellant complain of the court's action in ordering the preparation of a statement of facts in narrative form. Sec. 5 of Art. 759a, supra, provides as follows:

> "When a defendant in a felony case appeals and is not able to pay for a transcript of the evidence, he shall make an affidavit of such fact and upon the making of such affidavit the court shall order the official court reporter to make a Statement of Facts in narrative or question and answer form, as the defendant in said affidavit shall request. * * *"

Appellant made no request for a statement of facts in question and answer form.

■■■ Bill of Exception No. 5 presents appellant's complaint to the court's action in refusing his request for permission to file a trial amendment to his amended motion for new trial setting forth as additional grounds for new trial that the jury in their deliberations discussed the parole law. Such request was made at the time of hearing of appellant's amended motion for new trial. While Art. 755, V.A.C.C.P., provides that a motion for new trial may be amended by leave of the court, the bill does not contain the affidavit of any juror as to the alleged misconduct and there is no showing as to what any juror would have testified. In the absence of such an affidavit or showing, we are unable to say that the trial court abused his discretion in refusing to grant appellant leave to file the trial amendment.

■■■ By Bill of Exception No. 6, appellant complains of the court's action in overruling his application for change of venue. The bill of exception and record reflect that appellant filed his application for change of venue, supported by the affidavit of two compurgators, in which he alleged the existence of so great prejudice against him in Liberty County that he could not obtain a fair and impartial trial. The application was controverted by the state upon the affidavit of W. G. Woods, Jr., County Attorney of Liberty County, in which he swore that he was cognizant of the means of knowledge of the compurgators and that:

> " * * * their said means of knowledge are not sufficient to support and justify the statements contained in their said affidavits; that the said Philip Benestante and C. Holder, had not sufficient acquaintance and knowledge of the people throughout Liberty County with reference to the matters contained in said statement and affidavits, and had not sufficient information with reference to the matters in said motion

contained as to justify their statement that prejudice existed in Liberty County against defendant, that they were wholly unacquainted with the feelings and condition of the sentiment in Liberty County in relation to the case, and that they had not been over the County sufficiently to form a correct idea with reference thereto and are mistaken as to the extent of prejudice."

Art. 567, V.A.C.C.P., provides as follows:

"The credibility of the persons making affidavit for change of venue, or their means of knowledge, may be attacked by the affidavit of a credible person. The issue thus formed shall be tried by the judge, and the application granted or refused, as the law and the facts shall warrant."

The controverting affidavit was sufficient to attack the means of knowledge of appellant's compurgators and to raise an issue requiring the introduction of evidence, the burden being upon the applicant to show the existence of prejudice. Lemons v. State, 59 Tex.Cr.R. 299, 128 S.W. 416; Carlile v. State, 96 Tex.Cr.R. 37, 255 S.W. 990. The record presents no evidence introduced on the issue.

We are unable to agree that because it was stated in the controverting affidavit that the compurgators were "mistaken as to the extent of prejudice" it was insufficient to join issue on the question. See: Lemons v. State, supra. With the record before us, we are not bound by the court's certification in the bill that the controverting affidavit was insufficient as a matter of law. Sublett v. State, 158 Tex. Cr.R. 627, 258 S.W.2d 336; Free v. State, 165 Tex.Cr.R. 374, 307 S.W.2d 808. We find no error in the bill.

Finding the evidence sufficient to support the conviction and no reversible error appearing, the judgment is affirmed.

Opinion approved by the court.