### J. B. SENTELL V. THE STATE.

No. 614.    Decided March 23.

1. **Witness—Impeachment of.**—For the purpose of impeaching a witness' credibility, he may be asked, on cross-examination, if he was not then working out a fine for stealing a watch.

2. **Assault with Intent to Rape—Evidence as to Complaints of Prosecutrix.**—On a trial for assault with intent to rape, complaints of the outrage made by the assaulted female are legitimate and competent evidence; and the length of time intervening between the act and the complaints goes only to the weight, and not to the admissibility of such evidence.

3. **Same—Name of the Assaulting Party—Res Gestæ.**—In a trial for assault with intent to rape, the name of the assaulting party may be proved by the complaints of the prosecutrix, when such complaints and the details of the same constitute res gestæ.

4. **Prosecutrix—Impeachment—Sustaining Evidence.**—On a trial for assault with intent to rape, where an effort has been made to impeach the prosecutrix by proof of contradictory statements, *Held*, competent to sustain her testimony by evidence that she had told her mother the same facts testified to by her on the day of the assault, and prior to the contradictory statements.

APPEAL from the District Court of Rusk. Tried below before Hon. W. J. GRAHAM.

Appellant was indicted for assault to commit rape upon one Fannie Mullins, and at his trial was convicted of an aggravated assault, with punishment assessed at one year's confinement in the county jail and a fine of $500.

ENTELL V. THE STATE. 261

The main State's witness, Fannie Mullins, testified in substance as follows: That in the early part of the year she went to defendant's home to become a companion for his wife, in pursuance of an agreement made between defendant and mother of witness, that defendant was to care for her as one of his own children; that she remained there for sometime; that on one occasion defendant's wife left home on a visit, and she was to remain there during the day-time, attend to the household duties, and defendant was to carry her to a hotel in Henderson, where she should remain during the night; that she did not go to the hotel, but remained night and day at defendant's house; that during his wife's absence defendant attempted to kiss her, and offered her a new dress if she would kiss him; but she refused, and reported the fact to her mother, who told her that defendant meant no harm by his action, and told her to pay no attention to it. About the 1st of May Mrs. Sentell went to Henderson to spend the night with her sister-in-law. "I remained at defendant's house. During the afternoon, while I was in the front room, sewing, defendant came in and made a proposition to have carnal intercourse with me, and I refused. He tried to hire me to have intercourse with him; said he would give me a gold ring and fine dress if I would do so. I told him I would not, and started to leave the room. The defendant jumped up, and said he was going to have it, anyhow. He grabbed at me, caught me by the sleeve, and also by my dress skirt, and attempted to throw me on the lounge, and tried to pull up my clothes. I jerked away from him, and in doing so tore my sleeve, and my skirt came off. I ran across the hall to another room and locked the door on the inside. Defendant pursued me, and tried to get me to open the door. I refused. He went out the front way, but came back and demanded admittance again, and was refused. Upon his promise to let me alone, I prepared supper for him, and then got my bundle of clothes and started for Henderson. It was nearly dark. When within 300 yards of the hotel, defendant overtook me, riding horseback. He got off his horse, cursed me, and told me that if I made any fuss on the street he would kill me. He struck me in the face with his hands, kicked me, and ordered me back to his house. When we got to his house I went into the southwest room, put on my night clothes, and retired. I closed the door between that and defendant's room. There was no lock on the door. About 12 o'clock at night I felt somebody move the cover off of me and put his hand on my thigh. I sprang out of bed, and defendant ran into his own room. I did not sleep any more that night. Next morning I told defendant I was going home. He said I should not. He had a chain in his hand, and said he was going to chain me down, and then do what he pleased with me. He went out the door to get a leather strap to fasten the chain around me. I ran out and went to a negro's house, Henderson Jacobs, and asked for a pistol, telling him that Sentell was after me. I did not get the pistol, but left soon afterwards and got in Mr. Morris' wagon, told him what

was the matter, and asked him to take me to town. As we passed in front of defendant's house, defendant was standing on the front gallery. When he saw us he tried to get Mr. Morris to stop, but he did not, as I asked him not to do so. Mr. Morris carried me home, and when I got there I told my mother all about it."

This witness was corroborated by her mother; also by Dr. Pirtle, who heard what defendant said to Fannie Mullins when he overtook her on the road to Henderson the evening of the day upon which the offense is alleged to have been committed. The negro, Henderson Jacobs, also corroborated the testimony of Fannie Mullins regarding her going to his house and asking for a pistol, saying, "Sentell is after me."

*N. B. Morris* and *W. C. Buford*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was charged with assault with intent to rape, and convicted of aggravated assault and battery. A witness for appellant, on cross-examination by the State, was permitted to state, that he (the witness) was then working out a fine for stealing a watch. The objection urged was not well taken. A witness can be impeached in this manner. Morris testified for the prosecution, that on the morning of and shortly after the assault by appellant upon the prosecutrix, he saw her, about a half a mile from appellant's house, walking with bowed head, and with appearance of having been crying, and at her request took her to town, and thence to her home. She was greatly excited, and was trembling, and told him that appellant had insulted her. In going to town they passed appellant's house, when she became more excited and nervous. Appellant, when he discovered them passing, followed after, and demanded that the girl be left at his house. The girl, by permission of her mother, had been living with appellant's family some time, as a companion for his wife. The statements of the girl to Morris when he first met her were objected to by appellant. The objection was not well taken. The fact that complaint of the outrage was made by the injured female, in cases of rape and assaults to rape, is admissible in evidence, and the length of time intervening between the act and the complaint goes to the weight, and not so much to the admissibility, of the testimony. The details of the transaction or complaint made by the girl were not stated by this witness, if so made to him. It was clearly shown, that she had told others about the outrage by defendant, had sought protection from them, tried to borrow a pistol for self-defense against appellant, and this was proven without objection, and this before she met Morris. It is not clear by any means that it should have been rejected, even if the details had been testified to, under the facts stated. The intervening time may have been an hour or more, but the girl was excited, nerv-

ous, and trembling; and the facts rather tend to preclude the idea of design in fixing up or manufacturing the story told by her. Castillo v. The State, 31 Texas Crim. Rep., 145.

It may be stated, that the name of the assaulting party can not be proved, as in this case, unless the complaint and details thereof constitute res gestæ.

It was sought to impeach the girl by showing she had made statements out of court contradictory of her evidence on the trial. This was testified by the sheriff. The State was then permitted, over appellant's objection, to prove the prosecutrix told her mother the same story testified by her, on the day of the assault, and prior to the alleged statement to the sheriff. Under this state of case, the evidence was clearly admissible for the purpose of sustaining the witness. This is well settled.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.