### JAMES BERRY v. THE STATE.

No. 2562.    Decided January 21, 1903.

**1.—Continuance—Diligence.**

On an application for continuance, where it was made to appear that the absent witness was in the town where the trial was held, and was frequently about the courthouse from the 16th to the 24th of November, and that during said time he camped with defendant, and that he left the town on the 24th, and the verdict was rendered thereafter on November 26th; Held, no diligence was shown, and the application for continuance was properly overruled.

**2.—Assault with Intent to Rape—Declarations of Prosecutrix.**

On a trial for assault with intent to rape, the statements of prosecutrix were properly admitted in evidence, as res gestae, where it appeared that she had run three-quarters of a mile to escape her assailant, and immediately upon reaching home, in a prostrated condition, told her mother that defendant was the party who assaulted her, and described how he was dressed and the kind of horse he was riding.

**3.—Same—Evidence Sufficient.**

See opinion for evidence summarized which is held sufficient to support a conviction for assault with intent to commit rape.

Appeal from the District Court of Edwards. Tried below before Hon. I. L. Martin.

Appeal from a conviction of assault with intent to rape; penalty, three years imprisonment in the penitentiary.

The case is sufficiently stated in the opinion.

*W. C. Linden* and *H. C. Fisher, Jr.,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of assault with intent to commit rape, and his punishment assessed at confinement in the penitentiary for a term of three years.

Appellant presented an application for continuance for the want of the testimony of Elmo Hobbs, alleged to reside in Bandera County. It is alleged that on November 21, 1902, he caused subpoena to issue to said county for witness Hobbs to appear instanter, which subpoena was deposited by the clerk on said date in the postoffice at Rock Springs, with proper postage affixed, and has not been returned to court. The application insists that the testimony was material, in this: That the prosecutrix, Gladys Jarvis, has sworn, and it is presumed she will again swear, that defendant assaulted her just about sunset, and that defendant will be able to prove by witness John Hobbs that about two hours before sunset, on the day upon which the assault is alleged to have been committed, he and the said John Hobbs were together at Leakey, and were together about an hour, and left together, or about the same time; and that John Hobbs walked across his field to his hay camp, having engaged defendant to assist in baling hay, and defendant went around on horseback, in company with the two Payne boys, until he reached the gate entering the field in which said hay camp was situated; and that said John Hobbs could see, and did at frequent intervals see, defendant from the time defendant started around to said gate until he entered the same; and that during said time defendant did not commit the assault herein charged against him; that defendant and said John Hobbs reached the hay camp about the same time, and it was then about one-half hour before sundown; and that soon after reaching said camp John Hobbs sent defendant and his son, Elmo Hobbs, to water some horses, and they returned about dark. By Elmo Hobbs defendant will be able to prove that from the time he and defendant left said hay camp, some minutes before sundown, until after dark, he was with defendant continuously, and during said time defendant made no assault upon prosecutrix, Gladys Jarvis, and did not meet or see prosecutrix; that said testimony will be a complete denial of any assault of any character upon prosecutrix. The record shows that witness John Hobbs was not introduced, although present. The district attorney filed a controverting affidavit, setting up the fact that the application does not show diligence to obtain the presence of Elmo Hobbs; that witness Elmo Hobbs came to Rock Springs on November 16, 1902, and remained there continuously until November 24, 1902, and was frequently about and in the courthouse during said time, and that during said time said Elmo Hobbs camped with defendant, James Berry, and with his father, John Hobbs, Lon Welch, and others; that he did not leave the town of Rock Springs until the morning of November 24, 1902. The verdict of the jury was rendered on November 26th. We think the State is correct in its position that no diligence was shown. In the light of this record, the testimony is not probably true.

The second bill· of exceptions complains of the following: "Mrs. Jarvis, mother of prosecutrix, Gladys Jarvis, testified that when Gladys reached home on the evening of the alleged assault, a distance of three-fourths mile from where the alleged assault took place, she fell down on her knees at the gate of her home; she was crying, and was very much excited and exhausted, and when she '(her mother) reached her she could scarcely speak; that witness asked Gladys what was the matter, and she said a man had run her on horseback, and had got off of his horse, and had caught her by the arm and put his hand over her mouth, and that she had gotten loose from him and run all the way home." The State's counsel contended that all that Gladys said at the time to her mother was only a part of the res gestae, and offered to prove by Mrs. Jarvis, in addition to the above, who Gladys said the party was that assaulted her, and the details of the assault, as well as description of the party and the color of the horse he was riding. To this last offered testimony defendant objected, for the stated reasons that, in prosecution for˙ rape and assault to rape, the law permits the State to go no further in giving evidence of the complaint of prosecutrix than to prove that she made complaint, the time she made complaint, and the person to whom she made complaint, and that the law does not permit the State to prove the details of her statement, nor the person whom she charges with the offense, and because said proffered testimony is hearsay, and prejudicial to defendant,˙ and was too remote to be admissible as a part of the res gestae; and furthermore urged as an objection that the ability of prosecutrix to give a detailed description of the party alleged to have assaulted her, and the horse he rode and the clothing he wore, was evidence of the fact that it was not a spontaneous statement growing out of the transaction itself, but showed evidence of consideration. The court overruled the objection, holding the testimony res gestae, and the witness was permitted to state that at said time and place said Gladys said, in addition to her other statement, that the man who assaulted her was James Berry, and that her mother asked her if she was sure it was James Berry, and she answered she was sure of it, and that she had run all the way home; that witness asked her, "What on earth did you run all the way for?" and she said that she was afraid he would run after her and catch her again; that her mother did then and there ask her how the· party was dressed, and Gladys stated how he was dressed; and also she asked her the kind of horse he was riding, and in answer stated the kind of horse he was riding. To this last offered testimony defendant objected for the reasons stated. We think this testimony was admissible as a part of the res gestae. It appears that Gladys had run three-fourths of a mile, was excited, crying, and lying prostrate on the ground, when her mother reached her. This statement was continuous replies to questions asked by her mother. It precludes any premeditation, and shows that spontaneity which is one of the requisites of res gestae evidence. The court

did not err in admitting this testimony. Freeman v. State, 40 Texas Crim. Rep., 545; Castillo v. State, 31 Texas Crim. Rep., 145.

Appellant insists "that the evidence is not sufficient to warrant the finding that the assault, if made, was made with the specific intent to rape or to have carnal intercourse with the prosecutrix; the only evidence upon that issue being that of prosecutrix, substantially as follows: That she was on her way home from Leakey, and met defendant, Jim Berry, in the road. After he passed her on the way to Leakey, she looked back, and saw him on the outside of Fisher's gate, about eighty yards from the gate, standing by his horse, making a cigarette, and saw him tightening his saddle girth, and that later he overtook her in the road, and came near running over her on horseback, and she became frightened, and ran out of the road to escape the horse. Defendant got off his horse, and when she had run two or three steps farther he caught her by the left arm, and asked her whose little girl she was, and she told him she was Gladys Jarvis. That while he was running her on the horse she said to him, 'Jim, what do you mean; I will tell my papa on you;' and he said, 'My name is not Jim, my name is Slover; and you don't know where I live;' and she told him she did know him, that his name was Jim Berry, and that she screamed when he caught hold of her, and that he put his hand over her mouth, and she jerked loose from him and fell on the ground, and he caught hold of her and raised her up, and she screamed and pulled loose again and fell on the ground, and that she did not remember anything more until she had gotten some distance on her road home, and heard a cow bawling, and that was the first thing she knew, and did not know how long she lay on the ground. That this was all that was said by either herself or defendant. Her mother testifies that when she returned home her drawers were badly torn, but the record does not show when they were torn." Appellant's contention would lead to the conclusion that before there could be an assault to rape there must be evidence going to show a specific intent to rape or contemplated rape. The court properly charged the jury, and these circumstances were amply sufficient for the jury to conclude that appellant had such specific intent. We think their verdict was warranted by the evidence.

The judgment is affirmed.

*Affirmed.*

[Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]