### DAVE ROGERS v. THE STATE.

No. 1234. Decided January 31, 1912.

**1.—Assault to Rape—Evidence—Res Gestae—Impeachment—Physical Appearance and Declarations of Prosecutrix.**

Where, upon trial of assault to rape, the State was permitted to show that immediately after the occurrence, prosecutrix complained of defendant's assault upon her, and her appearance, statements, and mental excitement, there was no error, as the same was res gestae, and also served to counteract the contradictions imputed to her testimony; besides, the bill of exceptions was defective.

**2.—Same—Evidence—Shorthand Facts—Opinion of Witness.**

A witness can give a shorthand rendering of the facts how a party appeared, his condition, etc., even though it might be deemed to some extent the opinion of the witness.

**3.—Same—Demurrer to the Evidence.**

Where the evidence was sufficient to sustain the conviction, there was no error in overruling a demurrer thereto.

**4.—Same—Evidence—Woman—Female—Age—Statutes Construed.**

Article 21, Penal Code, provides that the word "woman" signifies a female

person of any age, and where defendant was charged to have assaulted a woman by force, threats, and fraud, there was no error in permitting the State to prove the age of the prosecutrix to be under the age of consent.

**5.—Same—Practice on Appeal—Brief.**

When questions are raised in the motion for new trial, they should be presented by appellant's brief; however, none of them present any error.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robt. B. Seay.

Appeal from a conviction of assault with intent to commit rape; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Crawford, Walker & Williams,* for appellant.—Witnesses may testify as to complaints by prosecutrix, etc., but will not be permitted to give particulars: Pefferling v. State, 40 Texas, 486; Veal v. State, 8 Texas Crim. App., 474; Holst v. State, 23 id., 1; Caudle v. State, 34 Texas Crim. Rep., 26; Reddick v. State, 35 id., 463; Bowen v. State, 47 id., 137; Cox v. State, 44 S. W. Rep., 157; State v. Griffin, 43 Wash., 591; State v. Hunter, 53 Pac. Rep., 247; Reddick v. State, 35 Texas Crim. Rep., 463, 47 S. W. Rep., 993.

Mere narrative statements of past transactions are inadmissible: People v. AhLee, et al., 60 Cal., 85; People v. Wong, Ark., 96 id., 125.

Statements made by witness after she had gone a considerable distance from the scene is not res gestae: Martin v. State, 82 S. W. Rep., 657.

Statements in response to question, etc., are not res gestae: State v. Pollard, 74 S. W. Rep., 969; State v. Hendricks, 73 id., 194.

The offense of assault to rape upon a woman, and that of assault upon a girl under the age of consent are separate and distinct offenses: Moseley v. State, 9 Texas Crim. App., 137; Gibson v. State, 17 id., 574; Craig v. State, 18 id., 321; Moore v. State, 20 id., 275; Rogers v. State, 17 S. W. Rep., 1077; State v. Wheat, 63 Vt., 673; State v. Houx, 32 A. S. R., 686; 33 Cyc., 1444.

Upon question of opinion of witness: Tillery v. State, 5 S. W. Rep., 842.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—On July 2, 1910, appellant was indicted for an assault with intent to commit rape upon Florence Chick, a woman, on June 19, 1910, by force, threats and fraud. He was tried on October 14, 1910, convicted and his penalty assessed at five years in the penitentiary.

It is unnecessary to give any extended statement of the testimony. On Sunday evening, June 19, 1910, the assaulted party, a young girl just then past fourteen years of age, who lived a few blocks from the

Fair Grounds in the city of Dallas, went from her home to the Fair Grounds with her little sister and brother, both younger than she and with another young girl about her own age and two other younger girls. They went into the Fair Grounds about the middle of the evening, to hear the music, and other purposes connected with the grounds. After being in the grounds some time the appellant came to where she was and asked her where her father and mother and oldest brother were. She told him they were all at home. He then left her, stating he would be back later. Later he did come back with a companion, Jack Hill, to where she and the other children were. It was then late in the evening, not long before night, or perhaps nearing night. The testimony then tends to show that the appellant took hold of her and Jack Hill took or went with the other girl about her age all together some distance across the Fair Grounds; that the appellant, when the other children attempted to follow them and did follow them for some distance, ordered them to stop and go back. They first declined and still followed. After going some distance further the appellant gave one of the children twenty-five cents and in this way and by threats against them induced them to cease following and return whence they came. The appellant with the prosecuting witness and Hill with the other girl then proceeded to a portion of the Fair Grounds to the bear cage. After staying there some time, the prosecuting witness claiming that she was kept there by appellant by force and notwithstanding her crying and attempt to leave, by force, he prevented her. Then about or after dark, he, by force took her between two of the large horse stables. She testified that he then threw her down and pulled her panties off of her, then put his knee across her chest, unbuttoned his top pants and started to undoing his under pants when he told her to stand up and she thereupon ran from, and escaped him; that he ran her. then clear across the Fair Grounds to another portion thereof where she met a policeman named Meeks and later or about the same time another police officer named Stacey and some others, apparently some of her girl companions.

The appellant did not testify. There was more or less testimony introduced tending to support the complaining witness in her testimony. There was some other testimony introduced by the appellant disputing various circumstances of her testimony and he also introduced statements contradicting, or tending to contradict her in various parts of her testimony. However, no testimony except her own was introduced as to the immediate assault upon her when she claimed the appellant took off her panties and unbuttoned his clothes. As soon as she reached the policeman she made statements to him of what had occurred. She was then crying, very much excited and her clothes more or less torn and soiled. She was then at once taken home by one of the policemen, made statements to him as he was taking her home and as soon as she reached home she told her parents what had occurred.

There is a great deal of the details of her testimony and of cor-

roborating circumstances and statements by others and of contradictions of her, unnecessary to give.

No complaint whatever in any way is made as to the charge of the court. There are many exceptions to the introduction and some to the exclusion of testimony.

We will take up, discuss and decide the questions as they are presented in the brief of the appellant's attorneys.

The first complaint is as to the admission of the testimony of the policeman Meeks, the mother of the prosecutrix, Stacy, a police officer, Trevathan, Annie Belle Kelley and Goldy Chitwood, as to giving the details of the assault upon her as related by her to them as soon as she saw them after the claimed assault. We will give bill No. 8 as a sample of each of the others. After the proper heading, the bill is: "Be it remembered that upon the trial of the above entitled and numbered cause, and while the State's witness Policeman Meeks, was upon the witness stand, and while he was testifying for the State when the State was introducing its evidence in chief, the said witness, Policeman Meeks, was permitted, over the objection of the defendant, to testify to the following facts, to wit: 'It was about seven o'clock when I saw Miss Chick, at the merry-go-round or hobby-horse. She seemed to be excited in some way when I saw her—worried about something. She was crying and her eyes were red; her breathing very short. She sobbed awhile and then says: "Dave Rogers had me down here by the barns," and I asked her then what was the trouble, if she was hurt in any way, and she said she was, and I asked her what tore her dress and I don't know what she said as I could not talk to her only at times; there was a crowd around there and I could not ask questions like I would have liked to ask. She said that defendant had taken some of her underwear off of her (her panties) and I asked her if there was anything else—if she was hurt, and she said there was, and about that time (if I am allowed to state it) I wanted to get her away from the crowd and talk to her more secret, and I took her away to one side.'" The appellant objected to said testimony for these reasons: (a) Because it was purely and exclusively the opinion and conclusion of the witness; (b) It was purely hearsay; (c) It was not res gestae; (d) The statements made by the prosecutrix to the witness were too remote from the time and place of the alleged assault as testified to by prosecutrix and as shown by the testimony in the record, to be of any probative value; (e) Appellant was not present and could in no way be bound by her statements; (f) It was an attempt by the State to bolster up her evidence by the witness Meeks' testimony; (g) By it the State placed before the jury all the details and minute circumstances, even connecting defendant by name with the offense charged; (h) Said Officer Meeks drew said statements from prosecutrix by questions to her and by insisting that she tell him everything about the transaction and persuading her to talk to him about the details and minute circumstances of the offense charged.

Bill No. 5, after making the same kind of preliminary statement as in the bill above copied, shows the State asked of the witness Meeks this question: "What did she tell you when you first saw her there at the merry-go-round or hobby-horse?" Appellant then makes certain objections to this question and the answer thereto, but nothing like as extensive as the above objections. The court permitted the witness to testify substantially as in the previous bill shown.

The next bill shows, after making the same character of preliminary statement, this question was asked the witness Meeks by the State: "What was her (prosecutrix) condition when you first saw her there at the merry-go-round or hobby-horse?" To which question the appellant then made substantially the same objections as shown to the previous questions and answers. The witness answered: "She seemed to be excited in some way when I saw her—worried about something."

The next bill, after making the same kind of preliminary statement, shows that this question was asked the witness Meeks by the State: "State how her breathing was?" The same character of objection was made to this as to the others. He was permitted to answer: "She was crying, her eyes were red and her breathing was very short."

The court, in approving these several bills, did so with this explanation: "The matters mentioned in this bill . . . occurred immediately after the little girl had got back from the trip where she states she was assaulted while she was still on the Fair Grounds, still sobbing and breathing short. I admitted this as a part of the res gestae."

Many years ago the rules by this court as to what bills of exceptions shall show were established and enforced. They are particularly and clearly stated by Judge White in his Annotated Code Crim. Proc. on page 732, sec. 1123 and sec. 857, page 557. We have many times in more recent decisions called attention to them. Conger v. State, 63 Texas Crim. Rep., 312, 140 S. W. Rep., 1121-2. Some of them have been made by this court recently. Notwithstanding the insufficiency of these bills in all of the particulars required by the rules, we have considered the various questions attempted to be raised thereby. All of this testimony and that of like character shown by the other bills herein was clearly admissible on two, if not other grounds, first, because the testimony was res gestae. Castillo v. State, 31 Texas Crim. Rep., 145; Sentell v. State, 34 Texas Crim. Rep., 260; Wells v. State, 43 Texas Crim. Rep., 451; Croomes v. State, 40 Texas Crim. Rep., 672; Thomas v. State, 47 Texas Crim. Rep., 534; Turman v. State, 50 Texas Crim. Rep., 7; Berry v. State, 44 Texas Crim. Rep., 395; Lights v. State, 21 Texas Crim. App., 308; Kenney v. State, 79 S. W. Rep., 817; Lemmons v. State, 59 Texas Crim. Rep., 299, 128 S. W., 416; Ramsey v. State, 63 S. W. Rep., 875. Second, because of the impeachment or attempted impeachment of the testimony of the prosecuting witness. Many of the cases above cited sustain the introduction of this evidence on this ground. See Branch's Crim. Law, sec. 874, for collation of further authorities on

this point. It is also well established by the decisions of this court and the text-books that recent complaint by prosecutrix, her state and appearance, marks of violence and the condition of her clothing shortly after the alleged occurrence, even though not strictly res gestae, may be proved as original evidence. Pefferling v. State, 40 Texas, 486; Lawson v. State, 17 Texas Crim. App., 292; Reddick v. State, 35 Texas Crim. Rep., 463; Roberson v. State, 49 S. W., 349; Lights, supra.; Holst v. State, 23 Texas Crim. App., 7; Grimmett v. State, 22 Texas Crim. App., 36 and many other cases might be cited.

It is also well established that a witness can state, which is a shorthand rendering of the facts, how a party appeared, his condition, etc., even though it might be deemed, to some extent, the opinion of the witness such as was complained of in this case by several of the bills in speaking of the prosecutrix, that "she was crying and going on;" "she seemed to be excited in some way—worried about something;" "she was crying, her eyes were red and her breathing was very short" and such like testimony. See Branch's Criminal Law, sec. 347 for some of the authorities on this point.

It is unnecessary to take up and discuss any of the other bills as to the testimony of these several witnesses, because they present substantially the same thing and are attempted to be raised in substantially the same way.

Another complaint by appellant is that the court erred in refusing to sustain his general demurrer to the testimony after the State had rested, because the evidence was insufficient to sustain the conviction and because, as we understand, that the State was permitted, over his objections, to prove by the prosecuting witness her age, to wit, just past fourteen years of age at the time of the alleged offense.

The indictment charged that the assault was committed on Florence Chick, a woman. The statute, Penal Code, Article 21, expressly provides that the word "woman" signifies a female person of any age. Even, without this, it clearly would not have been error to have permitted the State to prove the age of the prosecuting witness. The evidence introduced by the State fully authorized the jury to convict appellant if they believed the testimony of the State. There was no error in the court's refusal to sustain appellant's demurrer to the sufficiency of the evidence and on that account instruct a verdict of acquittal.

There are some other questions attempted to be raised by the motion for new trial but they are not presented by appellant's brief. We have carefully gone over all of them. It is unnecessary to state or discuss them. None of them present any error. The testimony in the case is amply sufficient to sustain the verdict.

The judgment will be affirmed.

*Affirmed.*