## GEORGE MCKINLEY GRACE v. THE STATE.

No. 6305. Decided June 22, 1921.

Rehearing denied November 23, 1921.

1.—Rape—Change of Venue—Compurgators.

Where, upon trial of rape, it appeared from the record on appeal that there was such evidence before the court below as to justify him in over-ruling the motion for change of venue, both in defendant's first and sup-plementary motions, there was no reversible error.

2.—Same — Newspapers — Prejudice by Reading Newspapers — Change of Venue.

It is not to be presumed that a fair-minded citizenship will necessa-rily become so prejudiced against one accused of crime by simply reading fair accounts of the matter in the newspapers, so as to result in the creation and existence of that prejudice which is contemplated by our statutes, as requiring the removal of the cause from the county in which the same is pending; and where it appeared in the instant case by the testimony of a number of witnesses that the expressions they had heard were about evenly divided, and almost all of them believed from their knowledge of the citizenship of the county that the defendant could get a fair and im-partial trial, there was no reversible error.

3—Same — Supplemental Motion — Bill of Exceptions — Practice in Trial Court.

Where defendant filed a supplemental motion for a change of venue after the special venire summoned was exhausted, but it appeared from the record on appeal that the jury was completed to try the instant case, without any person being forced upon the accused, who was objectionable to him, there was no error in overruling the supplemental motion.

4.—Same — Evidence — Confessions — Involuntary Confessions — Question of Fact.

Where, upon trial of rape, the State introduced against the defendant his written confession to which he objected, because the same was not freely and voluntarily made, but it appeared from the record that the evidence adduced was almost entirely favorable to the proposition that the confession was freely and voluntarily made, and the court submitted the question to the jury under proper charges, there was no reversible error.

5.—Same—Evidence—Contradicting Witness—Impeaching Testimony.

Where, upon trial of rape, it appeared from the record on appeal that while the mother of defendant was testifying in his behalf she was asked if she did not state shortly after the rape that her son was not in the county of the prosecution but was in Beaumont with his father, which she denied, whereupon the State introduced a witness who testified that the mother did make such statement, there was no reversible error.

6.—Same—Evidence—Contradicting Witness.

Where, upon trial of rape, defendant introduced a witness who testified that defendant's reputation with white people was good, and that his conduct was such as to merit same, there was no error on cross-examination to ask said witness if he had not told a certain officer that the hands with whom defendant associated were always teasing defendant about chasing white

women, and to which he answered in the negative, and the State then introduced the witness who testified that defendant's witness did so state; the alleged rape being upon a white woman, defendant being a negro.

### 7.—Same—Acts of Prosecutrix—Evidence—Outcry—Bloody Clothes.

Upon trial of rape by threats, there was no error in permitting evidence that prosecutrix went at once to her nearest neighbors who lived but a few feet from her home and made complaint, and that she and her clothing were bloody, etc. Following Duke v. State, 35 Texas Crim. Rep., 283, and other cases.

### 8.—Same—Charge of Court—Threats—Force—Fear—Intimidation.

Where the indictment charged rape by threats, and this issue only was submitted to the jury, and the evidence showed that both force and threats were used by the person committing the rape, this court will not indulge in hair-splitting speculations as to whether the fear and intimidation resulting from threats alone drove the victim to submission, or, as to the extent to which violence may have contributed to that end, and defendant's contention that the trial court failed to instruct the jury as to the character of threats which would be sufficient, is not sound.

### 9.—Same—Sufficiency of the Evidence—Identification—Confession.

Where, upon trial of rape by threats, the evidence showed that the prosecutrix identified the defendant as the party who committed the rape, and defendant confessed his guilt, although he afterwards denied that it was voluntary, but the question was submitted to the jury with proper instructions, who found the defendant guilty and assessed the death penalty, the judgment of conviction will not be disturbed.

Appeal from the District Court of Bexar. Tried below before the Honorable W. S. Anderson.

Appeal from a conviction of rape by threats; penalty, death.

The opinion states the case.

*W. C. Linden,* for appellant.—On question of submission of evidence by witness Ellison: Hoy v. State, 39 Texas Crim. Rep., 340.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the 37th district court of Bexar County of rape, and his punishment fixed at death.

This is the second appeal. See 88 Texas, 301, 225 S. W. Rep., 751. Appellant was given the death sentence upon his former trial.

A change of venue was asked in this case. By proper affidavit the State attacked the means of knowledge of the compurgators whose signatures were attached to appellant's motion for such change. Upon the issue thus joined the trial court heard a great deal of evidence, of such length as to render a reproduction of any considerable portion thereof impossible in this opinion. More than forty witnesses testified, and their testimony covers about 150 pages of the record. The range of said testimony was very wide. A large number of newspaper accounts of the various stages of the progress of the case from its in-

ception down to the present time, were incorporated in the record. We have examined these as well as the testimony of the various witnesses on the stand. Many of the newspaper articles appear to be a fair statement of the facts as they transpired, and are not inflammatory or apparently written for the purpose of creating any prejudice against the accused. It is not to be presumed that a fair minded citizenship will necessarily become so prejudiced against one accused of crime, by simply reading fair accounts of the matter in the newspaper, as to result in the creation and existence of that prejudice which is contemplated by our statute as requiring a removal of the cause from the county in which same is pending. It was shown by the record that Bexar County has a population subject to jury service of approximately 25,000 persons, and while some of the witnesses testified to having heard expressions unfavorable to appellant, our examination leads us to conclude that the number of persons heard to make such prejudiced statements was not very considerable. We find in the record the testimony of a number of witnesses introduced by appellant himself, who testified that the expressions they had heard were about evenly divided between favorable and unfavorable, and almost none of the witnesses testified that they believed from their knowledge of the citizenship of the county that appellant could not get a fair and impartial trial. In fact most of the witnesses testified to the contrary. Appellant is a negro, and the record contains the testimony of a number of negroes who testified that they believed he could get a fair and impartial trial in Bexar County. It was shown that the population of Bexar County was exceedingly cosmopolitan in character, and that in addition to a large number of negroes there was a great class of citizenship which entertained no prejudice against colored people. The trial court heard said evidence, and, in accordance with the duty imposed upon him by statute, came to a decision regarding same, and unless we are led to believe that his action was against what would appear to be just and right in the premises, it would be our duty to uphold his action. We are unable to conclude that there was such evidence before the court below as should have induced him to conclude differently from the judgment entered by him in overruling said motion.

The special venire summoned was exhausted without obtaining a jury, and thereupon appellant filed a supplemental motion for a change of venue, which was based upon what occurred in passing upon said first venire. We have examined this motion and the evidence supporting it, consisting of a stenographic statement of the results as to each venireman. Said first venire consisted of two hundred men, only one hundred and sixty of whom were summoned by the sheriff. Thirty of these seem to have been excused by the parties, probably before the trial actually began. In examining the venire twenty-three of them had conscientious scruples and were excused. Eleven were excused on account of sickness; nine failed to answer when their names were called; eleven were excused because of inability to understand the

English language.; some could not read and write; thirteen. were excusd because the wrong name appeared in the venire list; twenty-two had opinions about the case, and seven were excused by the court because of their bias or prejudice. Of said veniremen the State challenged four and appellant seven, peremptorily. Four jurors were obtained.

Instead of this result leading us to conclude that it showed the existence of that character of prejudice against appellant for which a change of venue should be granted, we are constrained to the opposite belief. After overruling said supplemental motion, a second venire of two hundred men were ordered, seventy-four of whom were not reached in the examination. As far as we are able to learn from the record before us the jury was completed without any man being forced upon the accused who was objectionable to him. There is no bill of exceptions in the record showing that when the jury was in process of completion, any person was forced upon appellant over his objection. A review of the entire history of the two venires present and summoned in the course of the selection of a jury in this case on the instant trial, shows that out of two hundred and fifty men who actually were examined before the court, a jury was secured apparently not objectionable to appellant. We do not believe the record shows such condition as would justify any conclusion of injury to appellant from being put to trial before a jury in Bexar County. We do not think any reason appears why the court should not have overruled either the original or supplemental motion for change of venue.

The State introduced against appellant his written confession. The bill of exceptions reserved by appellant to this action covers more than thirty typewritten pages. Said objections appear to be that said confession was not freely and voluntarily made by appellant after being warned. We can not reproduce the evidence, but it appeared to be almost entirely in favor of the proposition that said confession was freely and voluntarily made. Appellant himself testified at length and to the contrary of this view. In such case of contest the proper practice in this State seems to be to submit to the jury the voluntary character of such confession, instructing them that if they entertain a reasonable doubt as to whether said confession was freely and voluntarily made, they will not consider same. This was done in the instant case, and three special charges, prepared by appellant's counsel, were given to the jury covering various phases of said question.

Appellant's third bill of exceptions relates to the fact that when his mother was testifying in his behalf she was asked if the first officer who talked to her on the morning of appellant's arrest, same being the morning after the night of the alleged rape, did not ask her, "Where is your son that goes to work at the Katy railroad at eight o'clock, and leaves at four?" and if she did not reply, "He is not here, he is in Beaumont with his father." It is stated in the bill of exceptions that when the court overruled appellant's objection to the above question, the

witness answered, "I did not say that, positively did not." This ends the bill of exceptions. Thereafter the State placed upon the witness stand officer Perow, who stated over objection that he did ask appellant's mother the question above set out, and that she said to him that said boy was in Beaumont with his father. We think this evidence admissible for the purpose of impeachment. The presence of appellant in San Antonio at the time the inquiry was made was a material matter, and, his mother being a witness, it was competent to impeach her by proof of said statement.

Appellant's bill of exceptions No. 4 complains of a questio to defense witness Ellison, said question being in effect if witness had not told officer Perow that the hands at witness' place with whom appellant associated were always teasing him about chasing white women. There was no error in allowing the asking of this question as a predicate. The witness answered in the negative. The trial court did not err in allowing officer Perow to testify that defense witness Ellison did so state. The fact inquired about was not immaterial. Ellison was a witness on behalf of appellant, and was subject to attack by contradictory proof of any material matter. Appellant's good reputation and his conduct toward white people, and his disposition, were the matters about which witness Ellison testified affirmatively in behalf of appellant. Appellant's good reputation was necessarily based on what others said of him. Ellison testified that he had observed appellant's conduct toward whites, and he was willing to swear it was good. The weight of this testimony would be affected if it could be shown that other persons who were associated with appellant at the same time and place at which he was working for witness Ellison, were known to Ellison to entertain views contrary to those embodied in his testimony and had expressed them to said witness. If the matter referred to about which appellant's associates were teasing him, was shown to have been jocular, such explanation could have been made. Appellant had a right to have the effect of said testimony of officer Perow limited to the question of affecting the credibility of witness Ellison, but he did not see fit to do this. We think no injury shown.

That Mrs. Howard, prosecutrix, went at once to her nearest neighbor, who lived but a few feet from the home of prosecutrix, and made complaint, and that she and her clothing were bloody, appears well within the settled law regarding recent complaint and the condition of the clothing of the assaulted female soon after the alleged assault. Duke v. State, 35 Texas Crim. Rep., 283; Lawson v. State, 17 Texas Crim. App., 292; Holst v. State, 23 Texas Crim. App., 1; Sentell v. State, 34 Texas Crim. Rep., 260. That the defense interposed was alibi, would not make such facts inadmissible. The burden is on the State to show that the rape was committed in the manner alleged, and complaint made immediately afterward, is held to be original evidence. Burge v. State, 73 Texas Crim. Rep., 205, 167 S. W. 63; Rogers v. State, 65 Texas Crim. Rep., 105, 143 S. W. Rep., 631.

The indictment charged rape by threats, and this issue only was submitted to the jury. There was an exception taken to the form in which said issue was submitted. That portion of the charge directly relative to said issue was as follows:

"In this case the indictment charges rape by threats, and I charge you that threats, within the meaning of this statute must be such as might reasonably create a just fear of death, or great bodily harm, in view of the relative condition of the parties as to health, strength and other circumstances of the case.

To constitute the offense of rape by threats, therefore, it must appear that the defendant had unlawfully assaulted the injured female, and by means of threats as above defined violently ravished and had carnal knowledge of her without her consent and against her will and, further, penetration of the sexual organ of the female alleged to have been ravished, by the male organ of the party accused must be proved beyond a reasonable doubt.

The penalty prescribed by statute for the offense of rape is death or confinement in the penitentiary for life, or for any term of years not less than five, in the discretion of the jury.

Accordingly you are instructed that if you believe from the evidence, beyond a reasonable doubt, that the defendant did, as charged in the indictment, on or about the 24th day of February 1920, in the County of Bexar and State of Texas, make an assault in and upon the said Ruth Esther Howard, a woman, she not then and there being the wife of the defendant and did then and there by means of threats, violently ravish and have carnal knowledge of her, the said Ruth Esther Howard, without her consent and against her will, you will find the defendant guilty as charged, and assess his punishment at death, or a confinement in the penitentiary for life, or, in your discretion, at such confinement for any term of years not less than five."

Appellant's contention that this fails to instruct the jury as to the character of threats which would be sufficient, does not seem sound in view of the above quotation from the charge. If appellant desired further instruction as to the influence exerted upon the mind of prosecutrix at the time of the alleged rape, by the threats in evidence, he should have asked special charges presenting such issue. We do not think the fact that the threats were accompanied by violence, would affect the validity of the proceeding, nor the support of the verdict by the evidence. Abundant evidence of threats appears in the record, and while the prosecutrix did not say in words that appellant accomplished his purpose by threats, she does state fully the threats made by him when he came to her house and during the time he was there, and does say that just before he accomplished his purpose he told her if she holloed again he would kill her and her baby both. Rape may be by force or threats, or both, and when only one is alleged and both are proven, and beyond question contributed to the ravishment, this court will not indulge in hairsplitting speculation as to whether the

fear and intimidation resulting from threats alone, drove the victim to submission, or as to the extent to which violence may have contributed to that end.

This disposes of the contentions made on behalf of appellant. That Mrs. Howard was brutally assaulted and ravished seems beyond question. Her identification of appellant as the party who committed the rape, was positive. Appellant's confession was equally as positive and fully admitted his guilt. True, he denied the voluntary character of this confession, but that question was one presented to the jury with instructions that they should not consider said confession if it was not freely and voluntarily made, or in the event they had a reasonable doubt as to such being its character. As far as we are able to determine all those safeguards necessary to a fair and impartial trial, which have been evolved by the experience of the courts, seem to have been present on the instant trial and granted to appellant. His good character was proven. His alibi was also as complete as his relatives could make it. A Bertillion expert who took an impression of a finger print on the bed of prosecutrix, and compared same with that of appellant, said they were not made by the same person. These were all matters for the jury, and have been by them resolved against appellant.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

### November 23, 1921.

HAWKINS, JUDGE.—On account of the extreme penalty having been inflicted in this case, we have again examined the record and the authorities cited in appellant's brief and referred to in his motion for rehearing. We regret that we have been unable to reach the conclusion so ably contended for by counsel. The view expressed in our original opinion was arrived at after careful consideration because of the severe penalty fixed by the jury. To write at length on the motion would amount to nothing more than an expression in different words of the same conclusions.

The facts alleged in the motion cannot be considered by us. Pye v. State, 71 Texas Crim. Rep., 94.

The motion is overruled.

*Overruled.*