## ALICE COOK v. THE STATE.

No. 6383.   Decided November 16, 1921.

Rehearing denied December 14, 1921.

### 1.—Murder—Evidence—Declarations of Deceased.

Where, upon trial of murder by poison, it was shown that deceased in a conversation with defendant told her that she had given him poison and he was going to die, and this was said when deceased was suffering with cramping and convulsions, there was no reversible error.

### 2.—Same—Evidence—Acts of Defendant—Shorthand Facts.

Where, upon trial of murder, the State's witness was asked, with reference to the conduct of defendant while deceased was suffering and claiming to be dying from poison, there was no error in permitting the witness to state that the defendant did not cry or take on or anything. This was a shorthand rendering of the facts, and admissible in evidence.

### 3.—Same—Evidence—Conduct of Witness—Burial Expenses—Explanation.

On trial of murder, there was no error in permitting the State's witness to testify that he had paid the funeral and burial expenses of deceased, and after cross-examination of defendant, showing that the witness, who was

brother of deceased, got money from the Government after his brother had died, there was no error on re-direct examination to show that he applied this money to said burial expenses. Distinguishing Lewis v. State, 48 Texas Crim. Rep., 149, and other cases.

#### 4.—Same—Jury and Jury Law—Person in Charge of Jury.

Where defendant excepted that an unauthorized person had charge of and was with the jury after they had been empanelled, and while the trial was proceeding, but it appeared from the record on appeal that this person was a sheriff from a neighboring county, who had been directed by the court to be with the jury, which was also in charge of a deputy sheriff of the county of the prosecution; that the sheriff of said other county was not left alone with the jury exceeding one minute; that he neither mingled nor talked with them during that time, there was no reversible error.

#### 5.—Same—Evidence—Strychnine—Bottle Found—Identification.

Where, upon trial of murder by poisoning, the witness who sold the bottle of strychnine to defendant was permitted to testify that a bottle shown to her and which had been found near the scene of the homicide was exactly like the bottle in which was the strychnine sold by her to defendant, there was no reversible error, and the character of identification goes to the weight and not to the admissibility of the evidence. Following Buzan v. State, 59 Texas Crim. Rep., 213, and other cases.

#### 6.—Same—Evidence—Bill of Exceptions.

Where the bill of exceptions did not show that the witness saw either one of said parties on the day of the homicide, we can only infer therefrom that he saw neither of them, when he said that he did not see the accused with her husband on that day.

#### 7.—Same—Evidence—Reproduction of Testimony—Stenographers Report—Predicate.

Where the court stenographer, who took down the testimony of the absent witness at the former trial, testified as a predicate that he took her testimony correctly, etc., and that the testimony read was a correct copy of said notes, and it was shown that the witness had since removed to another state, there was no reversible error.

#### 8.—Same—Sufficiency of the Evidence—Motive Not Necessary.

Where, upon trial of murder and a conviction of said offense, the evidence showing motive was very slight, yet as motive is not a necessary element in a murder case, and it was shown that deceased came to his death from strychnine poisoning; that defendant had bought a bottle containing strychnine a few days before the homicide; and other evidence supported the conviction, there was no reversible error.

#### 9.—Same—Rehearing—Bottle Containing Strychnine—Evidence.

Where, upon motion for rehearing, appellant again complained of the admission in evidence of a bottle of strychnine similar to the one in which was strychnine, purchased by him, a very short time prior to the death of the deceased; *held,* that while the bottle itself was not that which killed, it was the container of the deadly agent and was therefore admissible in evidence. Following Jackson v. State, 48 Texas Crim. Rep., 650, and other cases.

#### 10.—Same—Jury and Jury Law—Officers in Charge—Practice on Appeal.

Where the record showed on appeal that there was no communication between the sheriff of another county and the jury during the short time he was in charge of them, etc., there was no reversible error.

Appeal from the District Court of Fisher. Tried below before the Honorable W. R. Chapman.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Stinson, Coombes & Brooks,* for appellant.—On question of officer with jury: Lester v. Hayes, 38 S. W. Rep., 52; Sargent v. Roberts, 1 Pick, 337; Holiday v. Sampson, 95 S. W. Rep., 643; Texas-Midland Rye Co. v. Byrd, 115 S. W. Rep., 1163; Corpus Christi Street & Interurban Ry. Co. v. Kjellberg, 185 S. W. 430; Quigley v. G. C. & S. F. Ry. Co., 142 S. W. Rep., 633; Holman v. Cusenbary, 225 id., 65; Grissom v. State, 4 Texas Crim App., 374.

*R. H. Hamilton,* Assistant Attorney General, for the State.—Cited cases in opinion.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Fisher County of murder, and her punishment fixed at five years in the penitentiary.

By her bill of exceptions No. 1 appellant complains of the admission of the testimony of J. I. Cook, said complaint being as follows: "Well, when she made this statement that she was sorry she gave him this and would never give him anything else, he looked up at her and said, he told her 'No,' he says, 'Alice, you will never get a chance to give me anything else.' He says: 'You have given me poison. I am going to die.'" The ground of objection was that it was a conclusion and opinion of deceased as to what appellant had given him. We do not think so. Deceased was then suffering, cramping and having convulsions, and we find no valid ground for holding it a mere opinion for him to state that what appellant had given him was poison.

The same witness was asked with reference to the conduct of appellant while deceased was suffering and claiming to be dying from poison the following, appearing in bill of exceptions No. 2:

"Q. Just state to the jury her appearance as to whether or not she was crying or not crying or showed any signs of grief at all.

A. She did not.

Q. Did not what?

A. Did not cry or take on or anything."

The objection to this also was that it called for an opinion and conclusion. In Rogers v. State, 65 Texas Crim. Rep., 105, 143 S. W. Rep., 633, we held almost identically the same language to be admissible as a shorthand rendering of the facts. A similar complaint in bill of exceptions No. 3 will not be further discussed, and also the same matter is presented in bill No. 10.

The same witness was allowed to state that he paid the funeral and burial expenses of deceased, which matter is complained of in bill of

exceptions No. 4. As qualified, the bill shows that on cross-examination appellant's counsel asked the witness if he did not get money from the government after his brother had died, to which witness answered that he did so get sixty dollars. Thereafter on redirect examination said witness was permitted to testify for the State that he paid said expenses above mentioned. We think it proper to permit a witness who may be embarrassed or prejudiced by having it shown that the collected or received money of the deceased after his death, to show the fairness of his purpose in getting the same and that he paid it out for the benefit of the deceased. We fail to see any prejudice possible to the cause of appellant from such evidence. It is neither unusual nor unnatural for some male relative of one who has died to act in such manner, and that wholly without reflection upon the wife or daughter or other female relative of deceased. We find nothing in Lewis v. State, 48 Texas Crim. Rep., 109, 86 S. W. Rep., 1027, or Jones v. State, 52 Texas Crim. Rep., 206, 106 S. W. Rep., 126, cited by appellant, holding contrary to our views as here expressed.

By her fifth bill of exceptions appellant complains that an unauthorized person had charge of and was with the jury after they had been impaneled and while the trial was proceeding. The facts are fully stated in the bill and show that during an intermission, no Fisher County officer being present, the trial court asked the sheriff of Kent County, who was in attendance on court as a witness for the State but was not called to testify, if he would take charge of the jury in their retirement. Before the jury left the courtroom, however, a deputy sheriff of Fisher County appeared and took charge of them, both he and the sheriff of Kent County going with the jury up to the jury room. Arriving at the door of said room the Fisher County deputy discovered that he did not have a key with which to unlock the door of said jury room and left the jury standing there, and also left the sheriff of Kent County, and went downstairs, got the key, returned and unlocked the door. It is shown that the sheriff of Kent County was not left alone with the jury exceeding one minute, and it is further made to appear that he neither mingled with them nor talked with them during that time. Under these facts we think any presumption of injury to the accused entirely negatived and that the bill shows no reversible error.

The witness who sold a bottle of strychnine to appellant was permitted to testify that a bottle shown to her and which had been found in the mouth of a prairie dog hole near the place where deceased lived, was exactly like the bottle in which was the strychnine sold by her to appellant. Thereupon said bottle was offered in evidence by the State. Objection was made to it on the ground that it was not identified, and that it was prejudicial, etc. The fact that a witness cannot be positive in his identification goes to the weight and not to the admissibility of the evidence. Tate v. State, 35 Texas Crim. Rep., 234; Coffman v. State, 51 Texas Crim. Rep., 486; Buza v. State, 59 Texas Crim. Rep.,

213. We see nothing in the introduction of a bottle containing poison which can be held to be objectionable by invoking the rule which in some cases has been used to exclude the bloody clothing of a deceased or the weapon with which the homicide was committed.

Bill of exceptions No. 8 complains of the fact that witness Tucker, who lived at the town of Girard on the day of the homicide, was permitted to say that he did not see the accused with her husband at Girard on said day. This bill does not show that the witness Tucker saw either one of said parties on said day, and we can only infer therefrom that he saw neither of them. No error appears.

By a lengthy bill of exceptions setting out the whole testimony of the witness, complaint was made of the reproduction of the testimony of Mrs. Maud Cook, a witness who had testified in person at a former trial of this case. It was shown by evidence that Mrs. Cook had since removed to the State of Oklahoma and was making it her permanent home, and that she was not present. The court stenographer who took down her testimony at the former trial testified, as a predicate, that he took her testimony correctly and that he wrote out his notes correctly, and that the transcript of such evidence, which was read to the jury, was a correct copy of said notes. These matters have been often before this court and settled contrary to appellant's contention. The testimony of a witness may be reproduced who had confronted the defendant in a court of competent jurisdiction and had been examined and cross-examined or opportunity given therefor, who has since died or removed beyond the jurisdiction of the court.

In a vigorous motion for new trial the sufficiency of the evidence was assailed. We have given this matter careful attention and regret our inability to agree with counsel in their earnest contention in this regard. While the evidence showing motive is very slight, we have often held it not necessary to show motive in a murder case. That deceased came to his death from strychnine poison was unquestioned. That appellant bought a bottle containing strychnine a few days before his death, was equally unquestioned. She and her husband were occupying a dugout or storm cellar as their abode, the door of which was but a short distance from a house occupied by the family of a brother of deceased. According to the State's testimony, on the evening or night of said occurence, after appellant and deceased had retired to their home, appellant came back to the house and reported that deceased was ill and suffering with cramps. Ira Cook, the brother, and his wife went at once and found deceased stooping over, holding himself and apparently suffering. Ira asked him what was the matter and he said that appellant gave him poison, stating that she begged and begged him to take it and he did it to please her. Several witnesses for the State testified to the conduct of appellant from that time until the death of her husband and afterward, and all seem to agree that she gave no evidence of emotion, did not cry or seem to be affected in any way. Ira Cook stated that while they were trying to do something for deceased he asked ap-

pellant to run to a neighbor's and get some alum but that she went away in a walk. A young lady who was at the home of said neighbor testified that when appellant came for the alum they gave her a small quantity and she started back; that witness found some more and started running after appellant, overtook her and was going to continue rapidly but appellant told her it was no need to run, she might make herself sick, there was no need to get scared in a case of that kind. On the second day after the death of deceased a bottle containing strychnine was found in the mouth of a prairie dog hole near the residence. The track of a woman's shoe was found in the soft earth near the mouth of said dog hole, and one of appellant's shoes was fitted· into the track in the presence of witnesses. It was further shown by the woman who sold appellant the strychnine that she asked her what she was going to do with it, and appellant said she was buying it for a man who came out to the road as she was coming to town and asked her to get it for him, and that she was buying it for him and did not know what he wanted with it. Appellant testified that she did not tell this to said woman, but that she bought the strychnine for her husband and gave it to him. She said she had some quinine in a paper in her trunk, and that on the day before her husband died she got some capsules, and he and she together filled four of them with said quinine, and that on the night he died she took a capsule herself, and as there was but one left she gave it to her husband but did not know whether he took it or not. She said she had not seen the strychnine bottle since she had bought it and brought it home and gave it to her husband. No complaint seems to be made by any exception to the charge of the court, and upon the issues of law and of fact fairly submitted the jury found appellant guilty and have seen fit to assess her punishment at the lowest term of years allowed by law. We cannot convince ourselves that their verdict is unsupported by the testimony.

Finding no error in the record the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

December 14, 1921.

LATTIMORE, JUDGE.—But two reasons are advanced for the granting of a rehearing. One relates to the admission in evidence of a bottle of strychnine similar to the one in which was strychnine purchased by appellant a very short time prior to the death of her husband. We cannot bring ourselves to believe that material error, if any, was committed in admitting in evidence this bottle. The finding of said bottle in the unusual place where same was discovered, shortly after the alleged poisoning and near the home of appellant where the poison was taken, would have criminative force. While the bottle itself was not

that which killed, it was the container of the deadly agent and would be apparently admissible for as many reasons as would the pistol, in a proper case, with which deceased was shot. Sanchez v. State, 67 Texas Crim. Rep., 453, 149 S. W. Rep., 124; Collins v. State, 77 Texas Crim. Rep., 156, 178 S. W. Rep., 345; McBrayer v. State, 34 S. W. Rep., 114; Jackson v. State, 48 Texas Crim. Rep., 650. See, also Canon v. State, 59 Texas Crim. Rep., 398. Appellant received the lowest punishment for the crime of murder. It being alleged that the murder was committed by poisoning, she could have been convicted of no lower degree of homicide. We have held in a case where the accused received the lowest penalty that the exhibition in evidence even of the bloody garments of the deceased was not such error as would call for a reversal. Long v. State, 48 Texas Crim. Rep., 179.

We have again reviewed the record in the light of the other complaint made by appellant, which is, that the sheriff of a county other than that of the prosecution was asked to take charge of the jury for a short time. The exhaustive brief in support of the motion cites many authorities which discuss the question of improper communication with a jury and the policy of the courts to decline to speculate as to the effect of such communication where the proof shows same to have taken place. We cannot see the relevancy of such authorities to the question involved. There was no communication between said sheriff and the jury during the short time he was in charge of them. The fact of communication was wholly negatived. We regret our inability to agree with the contentions and the motion must be overruled.

The motion for rehearing is denied.

*Overruled.*