## In re WITTUS.
### No. 55174.

District Court, E. D. Michigan, S. D.
March 2, 1931.

James L. Pangle, of Detroit, Mich., Asst. Dist. Director of Naturalization.

TUTTLE, District Judge.

This is a petition for naturalization filed by Leah Wittus, a married woman. The petitioner was born in London, England, on March 10, 1903, of alien parents. She entered the United States for permanent residence in 1915, when she was 12 years old. On June 25, 1921, her father, Nathan Lubovitch, an alien, was duly admitted to American citizenship. On June 25, 1922, at the age of 19, the petitioner married an alien, Morris Wittus, her present husband. On November 14, 1930, she filed this petition for citizenship pursuant to the Act of Congress of September 22, 1922, as amended July 3, 1930, which is now section 369 of title 8 of the United States Code (8 USCA § 369).

The sole question presented is whether the petitioner is now an alien or an American citizen. It is conceded by the government that, if she be an alien, she is entitled to citizenship under the statute last mentioned, but the government suggests that it is an open question as to whether she is not already an American citizen, and submits this question to the court for its decision thereon. Sec-

tion 8 of title 8 of the United States Code (8 USCA § 8) provides that "a child born without the United States of alien parents shall be deemed a citizen of the United States by virtue of the naturalization of * * * the parent, where such naturalization * * * takes place during the minority of such child." The petitioner, therefore, by the naturalization of her father in 1921, during her minority, became an American citizen. This is not questioned by the government. Section 3 of the Act of March 2, 1907 (chapter 2534, 34 Stat. 1228), which was in effect when the petitioner was married to her present husband in 1922, provided that "any American woman who marries a foreigner shall take the nationality of her husband." If, therefore, the petitioner at the time of her marriage in 1922 was an "American woman," she thereby lost her American citizenship and became an alien.

Section 3 of the Act of September 22, 1922 (42 Stat. 1022), already mentioned, repealed the provision of the Act of March 2, 1907, last quoted, by which an American woman marrying an alien lost her American citizenship, but this repealing act expressly provided that such repeal of the former provision "shall not restore citizenship lost thereunder." Section 4 of the said Act of September 22, 1922, provided that "a woman who, before the passage of this Act [September 22, 1922], has lost her United States citizenship by reason of her marriage to an alien eligible for citizenship, may be naturalized," as therein provided. This section, as amended July 3, 1930 (8 USCA § 369), in certain respects not here material, is still in effect.

 If, then, the petitioner, by her marriage to an alien in 1922, lost the American citizenship which she theretofore enjoyed, she is now an alien. It is, however, suggested by the government that, as the petitioner was under the age of 21 years at the time of such marriage, she was perhaps not at that time an American "woman," within the meaning of the hereinbefore quoted statute providing that "any American woman who marries a foreigner shall take the nationality of her husband." The argument proceeds to the effect that, until she reached the age of majority, she may have been, in contemplation of law, an "infant," and not a "woman," and that such majority was not reached until she was 21 years old; and it is said that therefore perhaps she did not lose her citizenship by such marriage, but continued thereafter, and up to the present time, to be an American citizen. I am unable to agree with this argument. It seems to me clear that the word "woman," as here used, was intended to refer to any American female who married a foreigner. No authority is cited, and I know of none, to the effect that a female person must have reached her legal majority (for the purpose of marriage, voting, or contracting) in order to be a "woman" within the meaning of the law. On the other hand, it has frequently been held that this word, when used in a statute, should be construed as referring to any female person. Myers v. State, 84 Ala. 11, 4 So. 291; Rogers v. State, 65 Tex. Cr. R. 105, 143 S. W. 631; Couch v. Commonwealth, 29 S. W. 29, 16 Ky. Law Rep. 477. It was assumed, without express discussion of the point, that the statute here involved should be so construed in the cases of Toshiko Inaba v. Nagle, 36 F.(2d) 481 (C. C. A. 9), and In re Chamorra (D. C.) 298 F. 669. I can discover no reason for supposing that Congress intended that, if a female American citizen married an alien when she was 19 or 20 years old, she should still retain her American citizenship, but that, if she waited until she was 21 before making such marriage, she should lose such citizenship. I am satisfied that in the absence, as here, of anything outside of the language used to indicate such an intention, the words "any American woman," as so used, were intended to refer to any female American citizen who might marry an alien. This is, in my opinion, the sensible and reasonable, as well as the usual and ordinary, meaning of these words.

I hold, therefore, that by reason of this statute the petitioner, by her marriage to an alien while she was 19 years old, lost her citizenship and became herself an alien, which she still is. As, however, it appears that she is entitled to be naturalized in accordance with the applicable statutory provisions, an order will be entered accordingly, granting her petition for naturalization.