WENDELL CLARK V. THE STATE.

No. 15924.   Delivered June 7, 1933.
Reported in 61 S. W. (2d) 517.

The opinion states the case.

*Gentry & Gray*, of Taylor, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for five years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Lewis Swinney by shooting him with a pistol.

The homicide occurred at a dance. According to the version of the state, appellant left the dance for the purpose of procuring a pistol with which to kill deceased. Returning to the scene of the homicide, he asked where deceased might be found, and stated, in effect, that he was going to kill him. Deceased was standing near an automobile talking to some parties when appellant approached him. Appellant spoke to deceased, and deceased turned toward him. Appellant said to deceased: "Well, you said you were going to kill me." Deceased replied: Yes, have you come to settle it?" Drawing his pistol, appellant shot deceased in the head. The testimony of the state was to the effect that deceased was unarmed and was making no demonstration toward appellant at the time appellant shot him.

Appellant testified that shortly prior to the homicide deceased had cursed him and told him that he was going to kill him. He said he left the dance hall and secured a pistol. As to his purpose in returning and seeking deceased, he said: "Yes sir, I took the six shooter and went to the dance. I went back because I wanted to get an explanation of what he said when we went to leave, and several times before. Yes, yes sir, I was scared to death of him." As to deceased's action at the time he shot him, appellant testified: "I asked them if they would go talk to him (deceased), and I said there would not be any trouble unless they started it. Then I walked up to where he (deceased) was. Lewis (deceased) was standing beside a car, and I stood there. He turned, looked back and stood straight up, turned around facing me. Then I said 'Lewis you said you were going to kill me didn't you?' and he said 'Yes, have you come to settle it?' and I shot him. I shot him because I thought he was fixing to get me. * * * * His coat blew open, and his shirt tail was hanging out, and when he went back for a gun, I seen his shirt and I had the gun in this sidepocket; so I just reached down, got the gun and shot him."

On the question of motive, the testimony of the state was to the effect that appellant had entered deceased's house during his absence and taken a pistol; that deceased had taken appellant to task for going to his home during his absence and taking his property; that appellant had been instrumental in filing a charge against deceased involving illicit traffic in intoxicating liquor, and was a witness against deceased; that appellant had become angry because of the fact that deceased had publicly denounced him for taking his property; that he had threatened to kill deceased.

The version of appellant and his witnesses as to the antecedent trouble between appellant and deceased was that appellant, who was 18 years old, and other young men of the same age had gone into deceased's smokehouse and procured a quantity of whisky belonging to deceased. Appellant and his witnesses testified that deceased, upon finding that they had gotten the whisky, pursued them and threatened to kill them. They testified, further, that thereafter, when deceased would meet appellant, he would curse and abuse him and threaten to kill him. They said that this continued until the night of the homicide, at which time deceased cursed appellant and told him he was going to kill him and advised him, in effect, that he had better leave the vicinity of the dance hall.

It appears to have been the state's theory that appellant's testimony touching the taking of whisky belonging to deceased was false, and that deceased had no whisky on his place at the time charged by appellant. In other words, the testimony of the state tended to show that deceased possessed no whisky, and that the prosecution which had been instituted against deceased was unfounded. In support of this theory, the wife of deceased testified that the house appellant testified he and his companions entered contained cotton, and that, although she had swept the house out shortly before the time appellant claimed he entered it, she saw no whisky there.

Bill of exception No. 5 presents the following occurrence: Appellant relied upon self defense, and testified to threats made to him in person by deceased and communicated to him by others. Appellant's testimony and that of three other young men, as heretofore pointed out, was to the effect that the first trouble that occurred between appellant and deceased was caused by appellant and the three other young men entering a house on the farm of deceased and taking therefrom a ten-gallon keg of whisky. Their testimony was to the further effect that deceased overtook them and assaulted one of the young men, and that deceased thereafter had threatened to

kill appellant, and on many occasions cursed and abused him. After appellant and his witnesses had testified as aforesaid, the wife of deceased, who was placed on the witness stand by the state, testified that she swept out the house shortly before the alleged entry by appellant and his companions, and that there was no whisky there. It is certified in the bill of exception by the trial judge that this testimony was offered by the state in an effort to show that deceased was not handling whisky. After the state had closed its testimony in rebuttal, appellant placed a peace officer on the stand, who testified that on the second or third day after deceased had been killed he had procured a search warrant to search deceased's premises and the house from which the whisky was alleged to have been taken by appellant and his companions. Appellant then asked the witness what he found in the house and on deceased's premises at the time he made the search. The district attorney objected on the ground that testimony touching the fruits of the search was immaterial and had no bearing on the case. The objection was sustained. The bill of exception recites that the witness would have testified that he found in a storm house in the yard of deceased ten 10-gallon kegs, all empty, but having the odor of whisky about them; that in the house where appellant claimed he had gotten the 10-gallon keg of whisky he found a ten gallon keg practically full of whisky; that a short distance from the place where the whisky was found he found where a fire had been built and discovered twenty iron hoops around in the ashes, which belonged to 10-gallon kegs. Further, it is recited in the bill of exception that appellant and his witnesses had testified that at the time they took the whisky there were a large number of kegs and other containers in the house.

In view of the theory of the state and the effort to stamp as false appellant's testimony as to the cause of the trouble between him and deceased, the opinion is expressed that the trial court was in error in excluding the testimony touching the result of the search of deceased's premises. Such testimony made more reasonable the hypothesis that the trouble grew out of the fact that appellant had stolen some of deceased's whisky, and that deceased had become angered and threatened to kill appellant. The state having taken the position that there was no whisky on the place, that appellant's testimony touching the matter was false, and that the charge which had been filed against deceased was unfounded, and having supported such position by the testimony of deceased's wife that there was no whisky in the house, it was proper for appellant to show that

shortly after the death of deceased a large quantity of whisky was found at the very place appellant testified he had seen whisky. From Branch's Annotated Penal Code, sec. 97, the following is taken: "Whatever material facts are introduced that tend to affect the issue, the other side has the right to deny, contradict, or explain that testimony, showing its falsity, or breaking its force and effect in any legitimate way."

In support of the text many authorities are cited, among them being Lemons v. State, 59 Texas Crim. Rep., 310; Biles v. State, 25 Texas App., 441; Skelton v. State, 51 S. W., 943. The refusal of the court to permit appellant to break the force and effect of the testimony of the wife of deceased was calculated to place appellant in a bad light in the eyes of the jury.

Bill of exception No. 2 shows that a witness for appellant had testified to the fact that he and appellant and others had gone to the smokehouse of deceased and secured some of deceased's whisky, and that deceased pursued them and assaulted one member of the party. While this witness was testifying to the foregoing facts the court stated, in the presence of the jury: "I don't see the materiality of that testimony." Appellant's counsel advised the court that the materiality would be shown. The court then stated, in the presence of the jury: "What he is detailing can have no bearing on this case." Appellant objected to the remark of the court, and the court stated that he would give him a bill. In view of the fact that the case must be reversed because of the error hereinbefore discussed, we deem it unnecessary to decide whether the bill of exception presents reversible error. We call attention, however, to article 707, C. C. P., which reads as follows: "In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage in the proceedings previous to the return of a verdict, make any remark calculated to convey to the jury his opinion of the case."

This statute has been given effect in numerous decisions. See Melton v. State, 124 S. W., 910; Ariola v. State, 289 S. W., 385; Dunn v. State, 9 S. W. (2d) 1035; Davis v. State, 24 S. W. (2d) 417.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.